**In re NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY SALES PRACTICES LITIGATION.**

**MDL–1105 (REK).**
**C.A. No. 96–11534–REK.**
**ALL CASES.**

United States District Court,
D. Massachusetts.

Oct. 1, 1998.

David Pastor, Kenneth G. Gilman, Gilman & Pastor, Boston, MA, Joseph J. DePalma, Goldstein Lite & DePalma, Newark, NJ, Richard A. Lockridge, Earle F. Kyle, Aaron A. Dean, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Joel P. Suttenberg, Schultz & Bednarz, Boston, MA, Nancy F. Gans, Moulton & Gans, LLP, Boston, MA, Stephen Moulton, Moulton & Gans, Boston, MA, Richard T. Phillips, Smith, Phillips, Mitchell, Scott & Rutherford, Batesville, MS, Fred Isquith, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Maria Bobonis–Zequeira, Woods & Woods, Hato Rey, PR, for Plaintiffs.

Peter S. Terris, Tamara S. Wolfson, Kenneth W. Salinger, Stephen L. Coco, Palmer & Dodge, Boston, MA, Alan L. Briggs, Squire, Sanders & Dempsey, Washington, DC, for Defendant.

## MEMORANDUM and ORDER OF CERTIFICATION and PRACTICE AND PROCEDURE ORDER NO. 6

KEETON, District Judge.

## TABLE OF CONTENTS

MEMORANDUM AND ORDER OF CERTIFICATION ............................ 36
  I.  Introduction ......................................... 36
  II.  Background and Class Definition ....................... 36
  III.  Rule 23 Class Certification Requirements ............. 37
    A.  Burden of Proof ................................. 37
    B.  Complexities Associated With Certification of a Class in Pretrial MDL Proceedings ....................................... 38
    C.  Findings Regarding Rule 23(a) Prerequisites to a Class Action ............ 38
      1.  Numerosity ................................. 38
      2.  Commonality ............................... 39
      3.  Typicality ................................. 39
      4.  Adequacy of Representation ................. 39
    D.  Rule 23(b) Requirements for Maintaining a Class Action ................. 40
      1.  Determination of Applicable Subsection 14 of Rule 23(b) .............. 40
      2.  Rule 23(b)(1) and Rule 23(b)(3) ..................................... 40
      3.  Certification Under Rule 23(b)(1)(A) ............................... 41
      4.  Certification Under Rule 23(b)(1)(B) ............................... 42
    E.  Deferral of Decision on Certification Under Rule 23(b)(3) .............. 43
    F.  Remaining Issues With Respect to Class Certification ................... 43
      1.  Deferral of Decision on Certification Under Rule 23(c)(1) ............. 43
      2.  The Reliance Issue ......................... 43
      3.  *Lexecon* .................................. 44
Order of Certification ............................................... 45

PRACTICE AND PROCEDURE ORDER NO 6 ................................ 45
  I.  Practice and Procedure .............................. 45
  II.  Consolidation and Coordination ...................... 47
  III.  Organization of Plaintiffs' Class Action Counsel ....... 47
  IV.  Service of Pleadings and Other Papers ................ 49
  V.  Confidential Information ............................. 49
  VI.  Pending Motions .................................... 49
  VII.  Preservation of Documents .......................... 49
  VIII.  Miscellaneous ..................................... 49
  IX.  Schedule ........................................... 49

## MEMORANDUM AND ORDER OF CERTIFICATION

### I. Introduction

This matter comes before the court after extensive briefing and oral arguments by the parties bearing on class certification and discovery issues in light of the Supreme Court's recent decisions in *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) and *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

At hearings on April 1, 1998 and May 21, 1998, the court proposed to the parties in this MDL proceeding the certification of a class defined more narrowly than the class originally proposed by the plaintiffs. *See* Plaintiff's Brief on the Class Certification Resolution Proposed by the Court During the Apr. 1, 1998 Hearing, Appendix A at 39 (Docket No. 64, filed April 30, 1998) and Transcript of Hearing and case Management Conference, Thursday, May 21, 1998 at 3–4. Plaintiffs agreed in principle to the court's proposed definition, *see* Docket No. 64 at 2, but have since filed an amended motion for class certification proposing a class defined even more broadly than in their first such motion. *See* Amended Motion for Class Certification at 1 (Docket No. 73, filed July 24, 1998).

Defendant opposes certification of a class and asks that the court continue to conduct consolidated proceedings without certification of any class. *See* Defendant New England Mutual Life Insurance Company's Response to Issues Raised by the Court at the April 1, 1998 Hearing at 1 (Docket No. 61, filed April 30, 1998).

After consideration of the briefs and memoranda filed with this court and the statements of counsel during oral arguments in the April 1, 1998 and May 21, 1998 hearings, the court orders the certification of a class as defined in the accompanying Order.

### II. Background and Class Definition

This MDL proceeding originated as separate actions filed against New England Mutual Life Insurance Company ("NEM"), a corporation with its principal place of business in Massachusetts, by plaintiffs who are citizens of Massachusetts, Mississippi, and New York. Plaintiffs' various complaints alleged that NEM used deceptive and manipulative sales tactics to encourage new and existing policyholders to purchase life insurance products based on artificially inflated projected dividends and "vanishing premiums." Specifically, plaintiffs claim that the alleged misrepresentations were based upon computerized materials prepared at NEM's home office that could not be altered by individual agents.

On June 17, 1996, the Panel on Multi-District Litigation ("MDL") consolidated the actions then pending against NEM and transferred those filed elsewhere to this court for MDL proceedings under 28 U.S.C. § 1407. *See* Transfer Order (Civil Action 96–11534, Docket No. 1, filed in the District Court for the District of Massachusetts, June 26, 1996). Several tag-along actions have also been consolidated for MDL proceedings in this court.

Following the transfer to this court, plaintiffs filed a motion requesting certification of a class under Rule 23(a), (b)(2)(3), and (c)(1) of the Federal Rules of Civil Procedure. *See* Plaintiffs' Motion for Class Certification (Docket No. 30, filed February 2, 1998). The class proposed by the plaintiffs was defined as follows:

> [A]ll persons or entities (the "Class" or "Class Members") who own (or owned at the time of the policy's termination) an interest in one or more TNE [New England Mutual] participating whole life insurance policies purchased on or after January 1, 1986:(i) pursuant to TNE's "vanishing premium" or "premium offset" payment method; and/or (ii) which was fueled, in whole or in part, by surrendering, withdrawing or borrowing money from one or more preexisting TNE policies.

Docket No. 30 at 1.

Because the class defined by the plaintiffs would have been too broad to be manageable and would have resulted in a class in which individual questions of fact or law would pre-

dominate over common questions of fact or law, the court proposed certification of the following class:

> [P]ersons who make a claim that New England Mutual made high-level management decisions based on actuarial and accounting calculations and projections, not disclosed to marketing employees and agents or persons responsible for training marketing employees and agents, for the purpose of marketing vanishing premium policies without disclosure either to the persons who are marketing them or to the persons who would be the potential purchasers, critical information to their decision as to whether this was an appropriate purchase for them to make.

Transcript of April 1, 1998 hearing, in Docket No. 64 at Appendix A, p. 39.

If the court were to limit the definition of the class in this way, then only those who made or make claims based upon factual allegations about NEM's high-level decisions would be class members, and common questions of fact and law about NEM's high-level decision-making processes would predominate over individual questions of fact and law.

In contrast with their statement in the hearing of April 1, 1998, accepting the court's suggestion for a more limited class definition than plaintiffs had originally proposed, plaintiffs have since proposed yet another class definition, which is not only broader than the court's proposal, but also even broader than plaintiffs' original proposed definition. Plaintiffs now propose certification of a class

> ... on behalf of all persons or entities (the "Class" or "Class Members") who TNE's records show purchased one or more TNE participating whole life insurance policies on or after January 1, 1986 pursuant to TNE's "vanishing premium" or "premium offset" payment method.

Amended Motion for Class Certification at 1 (Docket No. 73, filed July 24, 1998).

Such a definition cannot meet the Rule 23 requirements for certification, even under the most liberal interpretation of that rule. For reasons already discussed at length by the court at the April 1 and May 21, 1998

hearings, such an unreasonably broad definition, in the circumstances of this case, would make the proceeding one in which issues distinctive to individuals predominate over common issues; the proceeding would be unmanageable except by enormous waste of public and private resources; and, proceeding under Rule 23 would not be superior to separate proceedings on individual claims.

In these circumstances, for the reasons summarized above and explained more fully below, I conclude that plaintiffs' proposal for class definition must be denied. I conclude, nevertheless, that a narrower and more suitable definition can be fashioned and that certification with such an appropriate class definition would facilitate resolution of the litigation on the merits and would comport with both the letter and the spirit of Rule 23. The court, therefore, in the accompanying order, certifies the following class:

> Persons who:
>
> (1) make a claim that New England Mutual made high-level management decisions based on misleading or fraudulent actuarial and accounting calculations and projections that were not disclosed to:
>
> > (A) marketing employees,
> >
> > (B) persons responsible for training marketing employees, **AND**
> >
> > (C) agents;
>
> **AND,**
>
> (2) having been presented with information based on the above actuarial and accounting calculations, purchased vanishing premium or premium offset payment policies from New England Mutual on or after January 1, 1986;
>
> **AND,**
>
> (3) can, as a result of such purchase, state a cognizable claim under Massachusetts Consumer Protection Act § 93A, or common law fraud, or breach of contract.

## III. Rule 23 Class Certification Requirements

### A. Burden of Proof

A party seeking class certification must show that the action is "maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prod-*

*ucts, Inc. v. Windsor,* 521 U.S. 591, ——, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). Defendant argues that in deciding to certify a class in this case, the court impermissibly shifts the burden of proof onto the party opposing class certification. This argument is based on the court's question to the parties during the April 1, 1998 hearing: "Why shouldn't I issue an order today, in effect a show cause order, requiring each of you to show me any good reason, if there is one, why I should not certify a class consisting only of persons who make a claim that New England Mutual made high-level management decisions . . . ?" Transcript at 39.

The court, however, never did issue such a "show cause" order. Instead, the court allowed both parties to (i) submit further briefs discussing class certification under the definition the court proposed; (ii) come before the court on May 21, 1998 for oral arguments after the briefs and responses had been filed; and (iii) submit further briefs and replies addressing issues raised during the May 21, 1998 hearing.

The court did not at any time shift any burden onto the defendant. Rather, after careful consideration of oral arguments and filings of the parties, both before and after the April 1, 1998 hearing, the court now determines that, although the plaintiffs have not met their Rule 23 burdens with respect to the broader class definitions they proposed, they have provided sufficient evidence to support certifying the more limited class that is defined and explained in this Memorandum and Order.

Because of the complexity of the issues involved in this case, the court has allowed the parties additional opportunities to present their positions and arguments on the issue of class certification before making a decision. Defendant's characterization of this way of proceeding as a shifting of a burden is simply incorrect.

In short, the findings and determinations in this memorandum as to the Rule 23 requirements do not rest on the failure of the defendant to "show cause" or meet a burden. The findings are based on the court's evaluation of the evidence, and because the court is making affirmative findings based on that evaluation, the decision is in no way dependent on who has what kind of burden.

■ Debatable issues of law about burdens are moot when the court proceeds in this way, on the basis of affirmative findings supported by evidence of record before the court.

### B. Complexities Associated With Certification of a Class in Pretrial MDL Proceedings

■ As observed in the opening paragraph of this Memorandum and Order of Certification, this matter comes before the court in the context of deciding certification and discovery issues in an MDL proceeding in light of *Lexecon* and *Amchem.*

Because of questions of law not precisely answered in statutes and Federal Rules of Civil Procedure, and not reached and decided by the Supreme Court in *Lexecon* and *Amchem,* I conclude that the parties, their attorneys, and the court do not know at this time all the terms of the legal tests that will be applied to determine the outcome of all the litigation over NEM sales practices that are the subject of this MDL proceeding. This point applies both to the legal tests regarding substantive law (primarily, if not exclusively, the law of one or more states) and to the legal tests regarding procedure, including those legal tests applicable distinctively to MDL proceedings.

Among these unanswered legal questions are some that bear upon a trial court's decision of questions about certification of a class during pretrial MDL proceedings.

For reasons explained below, I conclude that it is appropriate for a trial court, in these distinctive circumstances, to make a decision for certification of a class in an MDL proceeding under Rule 23(a) and 23(b)(1) without deciding immediately whether a class will also be certified under 23(b)(3).

### C. Findings Regarding Rule 23(a) Prerequisites to a Class Action

#### 1. Numerosity

■ To be certified, a proposed class must be "so numerous that joinder of all members

is impracticable." Fed.R.Civ.P. 23(a)(1). In this case, the proposed class consists of an as yet undetermined number of policyholders. Plaintiffs, based on discovery thus far, claim that they have already identified "hundreds of Class Members subjected to the vanishing premium sales technique." Plaintiffs' Memorandum of Law in Support of their Amended Motion for Class Certification at 22 (Docket No. 75). Defendant does not explicitly deny this claim, but asserts that the members of the proposed class cannot be identified without individual fact-finding concerning each prospective member. *See* Defendant New England Mutual's Memorandum in Opposition to Motion for Class Certification at 17 (Docket No. 50, filed March 24, 1998).

Given the evidence before me at this time, I conclude that the plaintiffs have adequately demonstrated numerosity for the class as defined by the court. Although plaintiffs have not put before the court the names of the hundreds of identified plaintiffs, allegations that the home office of NEM engaged in a common course of conduct with respect to a class of policyholders around the nation reasonably lead to the inference and finding that hundreds, if not thousands, of policyholders would be affected if plaintiffs succeed on the merits.

I am not persuaded by NEM's contention that it will be impossible to identify potential class members without conducting individualized inquiry concerning each. The court's modification of plaintiffs' proposed class definition has significantly reduced the problems that otherwise would have existed. If the class is confined to those making claims based upon the training provided by NEM, the materials developed at NEM headquarters, and the practices of the home offices of NEM, no need will exist to probe into what individual agents said to individual policyholders.

### 2. Commonality

■ The second requirement that must be met as a prerequisite to class certification is that of commonality. Specifically, the court must be able to identify "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). In this case, the claims of the class members are based on allegations of a common course of allegedly fraudulent conduct by NEM's high-level decision-makers, as well as on the use of a common set of materials to convey information to the class members. I find that the court will be able to identify common issues of fact and law in this case.

### 3. Typicality

■ The third prerequisite for class certification is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). Typicality is assessed by determining whether the representative plaintiffs' "claims arise from the same course of conduct that gave rise to the claims of the absent [class] members." *Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54, 56 (D.Mass.1997) (internal quotation marks omitted).

■ All of the named plaintiffs in this case claim that NEM engaged in a single course of high-level decision-making. Specifically, they claim that high-level decision-makers provided allegedly misleading materials to NEM's sales agents, and that presentations based on these materials led the named plaintiffs and other class members to purchase life-insurance policies they otherwise would not have purchased. I find that the claims of the named plaintiffs in this case are typical of the claims of the class as defined in this Memorandum and Order.

### 4. Adequacy of Representation

■ The requirement that "the representative parties will fairly and adequately protect the interests of the class," Rule 23(a)(4), "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. 591, 117 S.Ct. at 2251. Because all parties cite *Amchem* in support of their positions, I consider the implications of that decision in some detail.

*Amchem* involved a district court's certification of a class, in an asbestos-related MDL proceeding, for the purpose of a proposed settlement under Rule 23(e). As in the case before this court, a number of claims that

had been pending in different courts were consolidated for proceedings and transferred under 28 U.S.C. § 1407. *See id.,* 521 U.S. 591, 117 S.Ct. at 2238. Before trial, the parties engaged in settlement negotiations in which the resolution of potential future claims occupied a significant role. *See id.*

The parties in *Amchem* proposed to the district court a settlement agreement that provided large awards to the named plaintiffs. The parties also proposed certification of a class that did not account for differences between class members with respect to type of exposure to asbestos (primary or secondary), the degree to which an individual had already suffered harm, the likelihood that an individual was likely to suffer harm from asbestos exposure, and the extent of harm suffered. *See id.* The district court accepted the proposed class certification and the proposed settlement.

Parties objecting to both the class certification and the settlement agreement appealed to the Third Circuit, which vacated the district court's approval of the settlement class. *See Georgine v. Amchem,* 83 F.3d 610 (1996). The Supreme Court granted Certiorari.

In addition to noting that the proposed settlement class "exclusively involv[ed] persons outside the MDL Panel's province—plaintiffs without already pending lawsuits," *id.,* 521 U.S. 591, 117 S.Ct. at 2239, the Court determined that serious intra-class conflicts of interest between plaintiffs with diverse medical conditions precluded adequate and fair representation of the class under Rule 23(a)(4). *See id.,* 521 U.S. 591, 117 S.Ct. at 2251.

In contrast with the circumstances of record in *Amchem,* the named plaintiffs in the case before this court have amply demonstrated that, with the court's definition of the class in place, the named plaintiffs will not have interests that would conflict with and impair their ability to protect the interests of the class as a whole. The members of the class this court is certifying all have claims of qualitatively similar harms arising from an alleged common course of conduct by defendant. Also, the interests of the named plaintiffs and the class I am certifying are sub-

stantially, if not entirely, identical. Finally, counsel in this case are well qualified to provide adequate class representation, having represented classes in a number of cases alleging improper conduct in the sale of vanishing premium life insurance policies. *See* Declaration of Barry Weprin, Esq. in Support of Class Certification (Docket No. 76, filed July 24, 1998) (listing similar litigation in which counsel for plaintiffs have been involved).

For the foregoing reasons, I find that all of the Rule 23(a) prerequisites to class certification are met.

### D. Rule 23(b) Requirements for Maintaining a Class Action

#### 1. Determination of Applicable Subsection of Rule 23(b)

In addition to meeting the Rule 23(a) prerequisites, a class definition must also satisfy one of the three subsections of Rule 23(b) to be maintainable. Because certification of a class under 23(b)(3) entails specific notice requirements and allows class members to opt out of the class, the trial court must at some stage of proceedings make an order specifying the provision or provisions of Rule 23(b) under which the court certifies a class or classes. *See Manual for Complex Litigation, Third,* § 30.14 (1995).

Subdivision 23(b)(2) provides for class certification where members of the class seek declaratory or injunctive relief and is inapplicable in the circumstances of this case. Plaintiffs seek certification under 23(b)(3), *see* Amended Motion for Class Certification at 1 (Docket No. 73, filed July 24, 1998), but, as explained immediately below, I conclude that the most appropriate subdivision under which to certify a class in this case is 23(b)(1).

#### 2. Rule 23(b)(1) and Rule 23(b)(3)

When the specific facts of a case warrant certification under either 23(b)(1) or 23(b)(3), the general practice is to certify the class under 23(b)(1), whether or not the court also certifies under 23(b)(3).

The determination as to whether to certify also under 23(b)(3) depends in part on considerations regarding added commitment of resources whenever a 23(b)(3) class is certified. For example, when a class is certified under 23(b)(3), potential class members are provided with notice and an opportunity to "opt out" of the class. Certification of an opt-out class

> would permit the institution of separate litigation, thus unduly burdening the judicial system and directly contravening both the stated purpose of Rule 23(b)(1)(A) in protecting defendants against "inconsistent or varying adjudications with respect to individual members of the class ..." and the stated purpose of Rule 23(b)(1)(B) in protecting plaintiffs.

Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1772 (quoting *Van Gemert v. Boeing Co.,* 259 F.Supp. 125, 130 (S.D.N.Y.1966)).

■ In the case before this court, the factors enumerated by the court in *Van Gemert* weigh heavily in favor of certification under Rule 23(b)(1), particularly with regard to considerations of economy for both the parties and the federal and state court systems. It is clear to the court, if not to all of the parties, that, for reasons of manageability and avoidance of conflicting judgments, as much as is feasible of the pretrial activity in the claims now before this court should be undertaken in a single court. These pragmatic considerations by themselves, however, are not sufficient to bring a case solely within the ambit of Rule 23(b)(1) and not as well within the ambit of Rule 23(b)(3). It may be necessary for the court, at some stage of proceedings before a trial of any part of this case commences, to make additional findings of likely prejudice or detriment either to the rights of defendant or to the rights of plaintiffs, depending on the class definition and the choice between certifying under 23(b)(1) only and certifying under 23(b)(3) as well.

### 3. Certification Under Rule 23(b)(1)(A)

■ Rule 23(b)(1)(A) provides for certification of a class when "inconsistent or varying adjudications with respect to individual members of the class ... would establish incompatible standards of conduct for the party opposing the class." In order to fall within this provision, some likelihood must be shown that a particular controversy will, indeed, generate separate adjudications. *See* Wright, et al., *Federal Practice and Procedure* § 1773.

■ In the circumstances of this case, it is difficult to quantify with precision the likelihood that, if no class is certified, actions other than those currently before this court will be undertaken. According to plaintiffs, the complexity of the issues involved relative to the amount of money each individual plaintiff might potentially recover makes individual suits, in addition to those now before this court, unlikely. But, if no class is certified in this case, it is highly probable that the claims that have been and will be consolidated for MDL pretrial proceedings will be remanded to the various transferor district courts for trial on the merits. Those trials would, of course, generate separate adjudications. The court, therefore, must examine the Rule 23(b)(1)(A) implications with respect to the possibility of such remands.

The First Circuit has not yet developed a definitive framework within which to decide whether to certify a class under Rule 23(b)(1)(A), but case law from other district and appellate courts applying Rule 23(b)(1)(A) is instructive. Courts have certified classes under 23(b)(1)(A) in cases in which a defendant might be forced to violate a judgment made in one court in order to satisfy a judgment imposed by another court. *See, e.g., McDonnell–Douglas Corp. v. U.S. Dist. Court for Central Dist. Of California,* 523 F.2d 1083 (9th Cir.1975); *Sembach v. McMahon College, Inc.,* 86 F.R.D. 188 (S.D.Tex.1980).

The majority of such cases are those in which a defendant has insufficient funds to compensate the pool of potential plaintiffs should those plaintiffs prevail in their claims. *See, e.g., Coburn v. 4–R Corp.,* 77 F.R.D. 43 (E.D.Ky.1977).

In the case before this court, I find that a significant likelihood of judgments in different courts, leading to an insufficiency of funds, does exist. In a case that was sub-

stantially similar to the case before me, Prudential Insurance Co. of America reached a settlement agreement with policyholders suing the company for fraudulent representations about vanishing-premium whole life insurance policies. The settlement agreement, was valued at no less than $410,000,000 and estimates of its value ran as high as two-billion dollars. *See In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 322 (3d Cir.1998).

Thus, the court is faced with at least two possible sets of future events. If no class is certified, then under *Lexecon* the court must remand the individual actions to the district courts from which they were transferred. If plaintiffs prevail in some number of these remanded actions, or if settlements are approved by individual district courts, defendant will likely be ordered to pay money damages, including compensatory and punitive damages. In order to ensure that the defendant will be able to satisfy the judgment for particular plaintiffs or for a class of plaintiffs from a single state, courts may order immediate payments or a set aside or freezing of funds. Because of the high amount of money at stake, a significant possibility exists that the defendant would be forced to violate one court's orders in order to comply with another court's orders.

The second possibility is that this court certify a class under 23(b)(1)(A) so that any relief ordered for the plaintiffs, should the plaintiffs prevail, can be considered in a coordinated fashion. Even if choice of law issues necessitate limitations on the nature and extent of this court's adjudication regarding relief, nevertheless some progress may be made toward a fair outcome among potential claimants by the adjudications that can be made for the class consistent with *Lexecon*. After that is accomplished, later proceedings in this and other forums, even if not broadly binding, may be useful examples in aid of settlement negotiations regarding claims not adjudicated in these MDL proceedings.

In summary, the court finds that, because of the significant likelihood that defendant will not be able to comply with judgments rendered against it in different courts, certification under 23(b)(1)(A) is appropriate.

### 4. Certification Under Rule 23(b)(1)(B)

A class may be certified under Rule 23(b)(1)(B), as well as 23(b)(1)(A), if the prosecution of separate actions would result in:

adjudications with respect to individual members of the class which would *as a practical matter* be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Fed.R.Civ.P. 23(b)(1)(B) (emphasis added).

The use of the phrase "as a practical matter" indicates that 23(b)(1)(B) is applicable not only to adjudications that legally would be *dispositive* of the interests of other members but also that would, in practice, have *a significant adverse impact* on interests of other members. Thus, the Advisory Committee's Note to the 1966 amendment to Rule 23 suggests a number of circumstances in which certification under 23(b)(1)(B) would be appropriate.

This provision is used most frequently for certification of a class where insufficient funds are available to satisfy for all class members their judgments against the defendant. *See, e.g., Jane Doe I v. Karadzic*, 176 F.R.D. 458, 462 (S.D.N.Y.1997). For the reasons detailed above in Section III.D.3, I find that the possibility of insufficient funds exists in the case currently before me.

Another related consideration exists and strengthens my determination that class certification is necessary in this case to protect the interests of the plaintiffs. This consideration involves the possibility that, while this litigation is being resolved, NEM may render itself, or may otherwise become, "judgment proof." Professor Lynn LoPucki suggests that corporations facing large obligations owed to involuntary creditors (e.g., judgment creditors) have begun to use a number of strategies to avoid such obligations. *See* Lynn M. LoPucki, *The Death of Liability*, 106 Yale L.J. 1, 6 (1996). LoPucki points out that, in some situations, it may be more economically advantageous for a corporation to undergo reorganization than to satisfy its judgment creditors. *See id.* at 44. A corporation may be able to maintain existing relationships with its contractual creditors be-

cause debts owed to such creditors would be satisfied before any payments were made to judgment creditors. Professor LoPucki's position has been challenged, and defended, in other articles published in the Yale Law Journal. *See* James J. White, *Corporate Judgment Proofing: A Response to Lynn LoPucki's The Death of Liability*, 107 Yale L.J. (1998); Lynn M. LoPucki, *Virtual Judgment Proofing: A Rejoinder*, 107 Yale L.J. 1413 (1998).

This court does not undertake to make a prediction as to the likelihood that NEM might "judgment proof" its assets. Nor does the court find it appropriate at this time to make any finding as to the likely final outcome of all the litigation over NEM sales practices under challenge. It is enough to determine the issue now decided that the court finds that the established possibility of a large monetary judgment in a case such as this gives rise to serious concerns about the ability of potential class members to obtain compensation in the absence of class certification.

I therefore find that class certification is appropriate under Rule 23(b)(1)(B), in addition to being appropriate under Rule 23(b)(1)(A).

### E. Deferral of Decision on Certification Under Rule 23(b)(3)

The class definition adopted by the court in this Memorandum and Order of Certification will govern proceedings from the date of this Order until the court, on motion or on its own initiative, makes a modification of the class definition. One significant possibility is that the court will be persuaded to make a modification of the class definition that has a significant bearing on whether Rule 23(b)(3) certification is appropriate. For this reason, the court makes no decision at this time on Rule 23(b)(3) certification and instead defers that decision until a later time in the development of these MDL proceedings.

### F. Remaining Issues With Respect to Class Certification

#### 1. Deferral of Decision on Certification under Rule 23(c)(1)

■ Because the parties in this case continue to refer to the possibility of "tentative"

certification of a class, the court is making explicit the fact that the certification ordered in the accompanying order is not a conditional certification under Rule 23(c)(1). The decision now made is, as are all decisions to certify a class, interlocutory in nature. As is true of interlocutory decisions generally, the court may find it necessary to amend the order to reflect developments as the case progresses. Also, the findings the court makes in deciding to certify the class, since they are associated with a decision that is interlocutory in nature, do not constitute dispositive findings on the merits and therefore are not in conflict with *Lexecon.*

### 2. The Reliance Issue

■ Defendant asserts that a class cannot be certified in this case because individual plaintiffs may, at some future point in the proceedings, have to demonstrate that they relied upon the materials prepared by NEM in making their decision to purchase a vanishing premium policy. According to the defendant, the court would have to "securitize" claims of fraud by presuming that plaintiffs relied on the information.

No need to deny class certification exists, however, simply because any particular plaintiff may have to offer additional proof, at some point in this MDL case, to assert class membership. All class actions necessarily require the court to resort to some means of determining who is entitled to membership in the class. No basis exists in the record now before the court for concluding that, as defendant asserts, those determinations of membership for individual claimants will be so onerous as to necessitate numerous "minitrials," one for each potential class member.

Even if it later becomes appropriate to modify the class definition to exclude some otherwise qualified potential members because for them the reliance issue is in genuine dispute and will require substantial evidentiary proceedings, that will not make it necessary to abandon the class action entirely. Amending the class definition as appropriate may be selected as a permissible and

more appropriate way of responding to the problem.

### 3. *Lexecon*

After this MDL proceeding had commenced, the Supreme Court decided the case of *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). In that case, the Court invalidated MDL Rule 14(b), *see* 28 U.S.C.A. foll. § 1407, which allowed a transferee district court to transfer cases consolidated for pretrial MDL proceedings to itself for trial under 28 U.S.C. § 1404(a). Because both the parties and the court had proceeded under the assumption that Rule 14(b) might apply in this MDL proceeding, the court asked the parties to include in their latest filings an assessment of what impact the Court's decision in *Lexecon* has on this MDL case. After considering the Court's opinion in *Lexecon*, as well as the filings of the parties, I conclude (contrary to defendant's position) that nothing in *Lexecon* bars certification of a class in this case.

*Lexecon* arose out of civil actions brought against Charles Keating and Lincoln Savings and Loan. *See Lexecon*, 523 U.S. 26, 118 S.Ct. at 958. The portion of the proceedings in those cases relevant to this case concern a suit brought by Lexecon, Inc., a consulting firm, against two law firms who had represented class action plaintiffs in civil actions against that firm. Lexecon claimed malicious prosecution, abuse of process, tortious interference, commercial disparagement and defamation. *See id.* After a complex series of procedural events, Lexecon's civil action against the two law firms was consolidated with other Savings and Loan litigation and transferred for MDL proceedings to the district court for the District of Arizona. *See id.*, 523 U.S. 26, 118 S.Ct. at 958–60. The court in the District of Arizona dismissed Lexecon's state law malicious prosecution and abuse of process claims, whereupon Lexecon moved for summary judgment on the remaining claims. The judge deferred action and, some months later, Lexecon moved that the district court send the case back to the MDL Panel for remand to the Northern District of Illinois. *See id.*, 523 U.S. 26, 118

S.Ct. at 960. This request was also deferred until such time as the judge granted summary judgment against Lexecon on all of the remaining counts except one in defamation and then transferred the case to his own court under § 1404(a) for trial. *See id.*

██ Defendant makes two arguments that essentially arise out of the *Lexecon* case. First, defendant asserts that, because this court cannot engage in the adjudication of the MDL transferred cases before it, it cannot certify the class. *Lexecon* contained no such holding. *Lexecon*'s holding was limited to the invalidity of MDL Rule 14(b). This court, however, does not expect at any time to transfer the MDL cases before it to itself. Rather, this court's order certifying a class that includes the MDL cases transferred to this court is designed to advance pretrial preparations so that the transferor courts will not have to repeat, case by case, all the preparation that will have been completed before the MDL cases are remanded. Nothing in *Lexecon* and no implication from *Lexecon*'s holding indicates that this court may not certify a class to serve this purpose in a proceeding such as this.

██ Defendant further asserts that *Lexecon* and its progeny prohibit this court from certifying a class action in an MDL proceeding with issues too complex for the MDL transferee court to try to conclusion. Defendant asserts that these cases will be unmanageable because of the different states' laws that will apply.

To the contrary, however, as this court envisions the process, certifying the class in these cases will be a substantial aid to working through complexity to fair and appropriate outcomes. The court is certifying the class and conducting pretrial procedures in such a way as to make it possible for both this court and any transferor court to which a case is returned to try to conclusion any case that is not settled.

If this court orders a first-phase trial of specific issues of any claims before remanding cases to transferor courts, it expects not to include in that first-phase trial any of the cases initially filed in other courts and transferred to this forum by MDL order. In

conducting pretrial proceedings and first-phase trials in this way, some advance may be made, useful in relation to most if not all claims, even though not all claims can be resolved without any remands to transferor courts. If, for example, NEM prevails in a first-phase trial of some claims before this court, on some issues, the likelihood that the parties to a claim in a transferor court will wish to try the same issues over again will be reduced. Thus, certifying a class at this point has significant advantages in terms of judicial efficiency, without any significant risk of increasing complexity.

### Order of Certification

**IT IS HEREBY ORDERED THAT:**

(1) Until further order of this or a higher court, this action may be maintained as a class action under Fed.R.Civ.P. 23(a) and 23(b)(1), subject to the terms and conditions set forth below.

(2) The Class is hereby certified, consisting of:

Persons who:

(1) make a claim that New England Mutual made high-level management decisions based on misleading or fraudulent actuarial and accounting calculations and projections that were not disclosed to:

(A) marketing employees,

(B) persons responsible for training marketing employees, **AND**

(C) agents;

　**AND,**

(2) having been presented with information based on the above actuarial and accounting calculations, purchased vanishing premium or premium offset payment policies from New England Mutual on or after January 1, 1986;

　**AND,**

(3) can, as a result of such purchase, state a cognizable claim under Massachusetts Consumer Protection Act § 93A, or common law fraud, or breach of contract.

(3) The named plaintiffs in the consolidated actions currently before the court are certified as the representatives of the class.

## PRACTICE AND PROCEDURE
## ORDER NO. 6

**This Order modifies and supplements previous Orders. The provisions of previous Orders that remain in effect are incorporated into Order No. 6, so it will be unnecessary for parties to go back to any earlier Order to determine what procedures are in effect after the date of this Order.**

### Part I.

### PRACTICE AND PROCEDURE

1. Until further notice, each document presented to the Clerk of the United States District Court for the District of Massachusetts in this MDL proceeding is to have the same caption as that appearing on the first page of this Memorandum and Order of Certification and Practice and Procedure Order No. 6. The descriptive caption of the document itself must appear where Memorandum and Order of Certification and Practice and Procedure Order No. 6 appears on this document.

The civil actions to which this Order applies, on the date of this Order, are the following:

D.MASS. C.A. No. 1:96–10047–REK (Suib, et al. v. New England Mutual, etc.)

D.MASS. C.A. No. 1:96–10165–REK Wischmeyer, et al. v. New England Mutual, etc.)

D.MASS. C.A. No. 1:96–10290–REK (King, et al. v. New England Mutual, etc.)

D.MASS. C.A. No. 1:96–10375–REK (Blyler v. New England Mutual, etc.)

D.MASS. C.A. No. 1:96–11047–REK (Bergman v. New England Mutual, etc.)

D.MASS. C.A. No. 1:96–11535–REK (McRaney, et al. v. New England Mutual, etc.)

(N.D.MISS. C.A. No. 4:95–406)

D.MASS. C.A. No. 1:96–11536–REK (Steiner v. New England Mutual, etc.)

(S.D.N.Y. C.A. No. 1:95–9994)

2. This Order governs the practice and procedure in those actions transferred to this court by the Judicial Panel on Multidistrict Litigation by its Order of June 17, 1996, as

well as all related actions originally filed in this court or transferred or removed to this court. These civil actions are listed in paragraph 1 above. This Order, in its present form and as amended, will also govern the practice and procedure in any tag-along actions transferred to this court by the Judicial Panel on Multidistrict Litigation under Rule 12 of the Rules of Procedure of that Panel after the filing of the final transfer order by the Clerk of this court and any related actions later filed in this court or otherwise transferred or removed to this court.

3. The actions described in paragraph 1 of this Order are consolidated for pretrial purposes.

4. Only a signed original of any pleading or paper is to be filed; no copies are to be filed. Unless otherwise ordered by an Amendment of this Order, all papers filed in these actions are to have the same caption as that of this Order. When a paper relates to all these actions, MDL–1105 (REK), D.Mass. C.A. No. 1:96–11534–REK, will be followed only by the notation "ALL CASES." If the paper does not relate to all of these actions the individual docket numbers of only those civil actions to which the paper relates (that is, the numbers assigned by the Clerk of this court, as listed in paragraph 1 of this Order) are also to be listed.

5. Any paper that is to be filed in any of these actions is to be filed with the Clerk of this court and not with the transferor district court.

6. Counsel who appeared in the transferor district court before the transfer need not enter a separate appearance before this court.

7. Before the first Case Management Conference, held on September 10, 1996, service of all papers was made on each of the attorneys on the Panel Attorney Service List attached to this Order as Schedule A.

a. Any attorney who wished to have his or her name added to or deleted from the Panel Attorney Service List was allowed to file a request with the Clerk of this court with notice to all other persons on the service list. Service is sufficient if made upon all attorneys on the Panel Attorney Service List.

b. The parties presented to the court at the first Case Management Conference a list of attorneys for purposes of service. Only one attorney for each party separately represented is included on the list.

8. Before the first Case Management Conference, held on September 10, 1996, counsel for each group of parties whose interests are similarly aligned was allowed, if they chose to do so, to designate liaison counsel, subject to the approval of the court. Liaison counsel are authorized to receive orders and notices from the court on behalf of all parties within their respective liaison groups and are to be responsible for the preparation and transmittal of copies of orders and notices to the parties in their respective groups. Liaison counsel are required to maintain complete files with copies of all documents served upon them and will make such files available to parties within the respective liaison groups upon request. Liaison counsel are also authorized to receive orders and notices from the Judicial Panel on Multidistrict Litigation under Rule 8(e) of the Panel's Rules of Procedure on behalf of all parties within their respective liaison groups and are to be responsible for the preparation and transmittal of copies of orders and notices to the parties in their respective liaison groups.

9. Upon remand of any of these actions the parties will be required to provide to this court copies of any necessary and relevant papers previously filed.

10. No party to any of these actions is required to obtain local counsel in this district, and the requirements of Rule 83.5.3(b) of the Local Rules of this court do not apply to any attorney who is duly admitted to practice before any United States court and is appearing in this court only in these actions.

11. Hearings will not be held on any motions filed unless so ordered by the court and after such notice as the court directs.

12. Any paper filed in any of these actions that is substantially identical to any other paper filed in another of these actions

may incorporate by reference the paper to which it is substantially identical and need not attach that paper or quote it. Where counsel for more than one party plan to file substantially identical papers they are to join in the submission of the papers and file only one paper on behalf of all so joined.

13. Any orders including protective orders previously entered by this court or any transferor district court remain in effect unless modified by this court, either in later Parts of this Order No. 6, or upon later application, or upon this court's initiative.

14. All discovery proceedings in these actions are stayed until further order of this court, either in a later Part of this Order No. 6 or a later Order, and the time requirements to perform any acts or file any papers under Rules 26 through 37, *Federal Rules of Civil Procedure*, are tolled until the next Case Management Conference, during and following which a further Order may be made.

15. The court will be guided by the *Manual for Complex Litigation, Third* approved by the Judicial Conference of the United States, and counsel are directed to familiarize themselves with that publication.

16. All other matters are open to consideration at the next Case Management Conference.

17. Unless the court requires attendance in person because of special circumstances, counsel who wish to participate in Case Management Conferences by telephone may do so rather than appearing in person. If more than two persons make such a request, however, the court's telephone conference facilities are inadequate; in that event, counsel must set up arrangements for the conference call. In either event, counsel wishing to participate by telephone must, at least 24 hours before the time of the conference, call the Deputy Clerk at 617–748–9158, to confirm whatever arrangement is proposed.

## Part II.
### CONSOLIDATION AND COORDINATION

1. No action taken hereunder shall have the effect of making any person, firm or corporation a party to any action in which he, she or it has not been named, served or added as such in accordance with the Federal Rules of Civil Procedure.

2. When a case that relates to the same subject matter as the Consolidated Action is hereafter filed in this court or transferred here from another court, the Clerk of this court will:

A. Make a copy of the Order of assignment to lead counsel for plaintiffs and counsel for defendant in these actions.

B. Make an appropriate entry in the docket.

C. Mail a copy of this Order to the attorney(s) for the plaintiff(s) in the newly filed or transferred case.

D. Upon the first appearance of any new defendant(s), mail to the attorney(s) for the defendant(s) in such newly filed or transferred case a copy of this Order No. 6.

3. The court requests the assistance of counsel in calling to the attention of the Clerk of the court the filing or transfer of any case that might properly be consolidated or coordinated for pretrial purposes with these actions.

4. This Order applies to each case subsequently filed in or transferred to this court, alleging claims similar to those set forth in the consolidated action, unless a party objecting to the consolidation or coordination of that case or to any other provision of this Order files and serves an application for relief from this Order or from any of its provisions within twenty-one (21) days after the date on which the Clerk mails a copy of this Order to counsel for that party.

## Part III.
### ORGANIZATION OF PLAINTIFFS' CLASS ACTION COUNSEL

A. *Lead Counsel and Liaison Counsel.* The following are designated to act on behalf of plaintiffs in these consolidated actions, with the responsibilities hereinafter prescribed:

Lead Counsel:

Milberg Weiss Bershad Hynes & Lerach, LLP
One Pennsylvania Plaza
New York, New York 10119
(212) 594-5300

Liaison Counsel:

Gilman and Pastor
One Boston Place
28th Floor
Boston, Massachusetts 02108
(617) 589-3750

B. *Lead Counsel.* Lead Counsel is expected to maintain communications and promote harmonious dealings among all plaintiffs' counsel. Lead Counsel will supervise the activities of plaintiffs' counsel and will exercise the functions of lead counsel as outlined in the *Manual for Complex Litigation, Third* §§ 20.22 and 41.31. Lead Counsel will have the following responsibilities and duties to perform or delegate as appropriate.

1. direct the preparation of pleadings to be filed in the consolidated action;

2. brief and argue motions and to designate plaintiffs' counsel to brief and/or argue motions;

3. initiate and conduct discovery, including but not limited to coordination of discovery with defendant's counsel, the preparation of written interrogatories and requests for the production of documents and to designate other plaintiffs' counsel to initiate and/or conduct such discovery;

4. direct and coordinate the examination of witnesses by plaintiffs' counsel in depositions;

5. act as spokespersons at pretrial conferences and to designate other plaintiffs' counsel to act as spokespersons at pretrial conferences;

6. call and chair meetings of plaintiffs' counsel as appropriate or necessary from time to time;

7. initiate and conduct, in conjunction with the other plaintiffs' counsel, any settlement negotiations with counsel for the defendant;

8. provide general coordination of the activities of plaintiffs' counsel and to delegate work responsibilities to selected counsel as may be required in such a manner as to lead to the orderly and efficient prosecution of this litigation and to avoid duplicate or unproductive effort;

9. consult with and employ experts;

10. receive and review periodic time reports of all other plaintiffs' counsel and to determine if the time is being spent appropriately and for the benefit of plaintiffs; and

11. perform such other duties as may be expressly authorized by further order of the court.

C. *Coordination and Consultation on Discovery and Pleadings.* Lead Counsel will coordinate and consult with the plaintiffs' counsel in the formulation and drafting of discovery material on behalf of plaintiffs in the consolidated action, including interrogatories and document requests, the formulation and drafting of pleadings, briefs and motion papers in these consolidated actions; and such other tasks as Lead Counsel determine need to be performed.

D. *Filing of Pleadings.* No pleadings or other papers will be filed or tasks performed by plaintiffs in this consolidated action without the advance approval of Lead Counsel. No discovery will be conducted by plaintiffs in this consolidated action without previous approval of Lead Counsel. If approval is not forthcoming, aggrieved counsel may make application to the court for permission to conduct specified discovery.

E. *Time and Expense Data.* All plaintiffs' counsel in this consolidated action must submit to Lead Counsel a record of time expended and expenses incurred in the manner, form and frequency directed by Lead Counsel.

F. *Functions of Liaison Counsel.* Liaison Counsel is authorized to exercise the functions of Liaison Counsel as outlined in the *Manual for Complex Litigation, Third* §§ 20.22 and 41.31, and as set forth here in Part III.

## Part IV.
### SERVICE OF PLEADINGS AND OTHER PAPERS

Except when otherwise agreed, defendant's counsel must serve Lead Counsel with any pleadings, motions, memoranda, opposition and other papers by hand or by overnight delivery. Plaintiffs' other counsel may be served by regular mail.

Plaintiffs' counsel must serve all of defendant's counsel with any pleadings, motions, memoranda, opposition and other papers by hand or overnight delivery to all of defendant's counsel.

## Part V.
### CONFIDENTIAL INFORMATION

If either party believes it is necessary, the parties must submit to the court on or before thirty (30) days following entry of this Order a stipulated form of order that fulfills the requirements of First Circuit case law, providing for the confidential treatment of certain documents and information provided by the parties to one another in this litigation. Should the parties be unable to agree, their respective proposals regarding such confidential treatment must be filed before thirty (30) days following the date of this Order.

## Part VI.
### PENDING MOTIONS

All pending motions are hereby withdrawn without prejudice.

## Part VII.
### PRESERVATION OF DOCUMENTS

During the pendency of this litigation or until further order of this court, every party must take reasonable steps to preserve every document within his, her or its possession, custody or control containing information that is relevant to, or may reasonably lead to the discovery of information relevant to the subject matter involved in the pending litigation.

## VIII.
### MISCELLANEOUS

A. Counsel for all parties are directed to cooperate.

B. To the extent that this court has authority to do so, this court now orders that any exchange or disclosure of information or documents between or among counsel for plaintiffs and counsel for defendant in connection with the consolidated action will not be construed as a waiver of any attorney-client, work product, or other privilege.

C. All subsequent pretrial orders issued in these proceedings will be numbered consecutively. Any reference to an order of this court in any document filed with the court must include the proper number of the order.

D. This Order No. 6 may be amended by the court on its own motion, and any party may apply at any time to this court for a modification or exception to this Order.

## Part IX.
### SCHEDULE

The next case management conference is set for November 12, 1998, at 3:00 p.m.