Robert O'BRIEN, individually and on behalf of a class of employees similarly situated, Plaintiff,

v.

ENCOTECH CONSTRUCTION SERVICES, INC., and Howard Frank, Defendants.

No. 00 C 1133.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 19, 2001.

Jac A. Cotiguala, Luanne M. Galovich, Law Offices of Jac A. Cotiguala, Chicago, IL, for plaintiff.

Edward W. Bergmann, Noah A. Finkel, Chicago, IL, for defendants.

## ORDER

GOTTSCHALL, District Judge.

Plaintiff, Robert O'Brien, has filed a class action lawsuit against defendants, Encotech Construction Services, Inc. ("Encotech") and Howard Frank, Encotech's owner. In his four-count complaint, O'Brien alleges that he and a class of Encotech employees were not compensated for all the hours they worked and not compensated at the overtime rate for all hours worked in excess of forty hours per week. Counts 1 and 2 allege violations of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, respectively. Counts 3 and 4 allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a). Plaintiffs have already initiated a collective action suit for counts 3 and 4 under the FLSA, in which employees may opt-in to a class action regarding claims under the FLSA.

Plaintiffs now move to void releases of liability signed by employees of Encotech and move to send corrective notices to those employees. Plaintiffs also move to certify a class action for their state law claims in counts 1 and 2. Defendants oppose all motions. For the reasons set forth below, plaintiffs' motion to void releases is granted in part and denied in part; their motion to send corrective notices is denied; and their motion for class certification is granted.

### I. Motion to Void Releases

Plaintiffs move to void releases that Encotech employees signed with defendants. According to Encotech, it entered into "identical agreements with fifteen of its current employees—but not Plaintiff himself—in which, in exchange for a sum of money, the employees released claims they may have against Encotech under the FLSA, [IMWL], and [IWPCA]." (Def. Resp. to Pl. Mot. to Void Releases at 2.) Plaintiffs allege the following regarding the way in which the agreements were obtained:

> Defendant Howard Frank, the owner and top manager of Defendant Encotech Construction Services, Inc., had every currently employed operator and helper come to his office individually on the September 27, 2000 pay day. In one-on-one meetings in his office, Frank handed each employee a Release along with a letter dated September 27, 2000 and asked the individual to execute the Release .... Thereafter, other management employees indicated their belief that employees who did not execute the Release would be laid off when winter came.

(Pl. Mot. to Void Releases at 2.)

The cover letter accompanying the proposed release states: "It has come to [Encotech's] attention that there has been a claim that some employees have not been paid properly for travel to the day's first job site and from the day's last job site," and that "[Encotech] believe[s] that Encotech has fairly and properly compensated employees for all hours worked." (Exh. A to Pl. Mot. to Void Releases.) The letter continues, "Nevertheless, [Encotech] want[s] to be sure that all employees are satisfied with their experience at Encotech." (Id.) The letter then says that "[Encotech] therefore [has] decided to offer you some additional compensation for your work at Encotech." (Id.)

The release states that, in return for an amount of money indicated by the release, the employee fully releases Encotech from all liability "relating to claims for overtime or straight-time compensation" under the FLSA, the IMWL, and the IWPCA. (Id.) The form continues by stating that the "[e]mployee acknowledges and understands that ... [e]mployee has the right to consult an attorney before executing this Release;" that the "[e]mployee does not have to sign this Release;" and that the "[e]mployee is entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance." (Id.)

As an initial matter, it must be noted that plaintiffs successfully brought a motion before this court in late September seeking to stop defendants from further soliciting the above releases from Encotech employees. In granting plaintiffs' motion, the court noted that "[d]efendant has done more than simply attempt to settle with individual members of the potential plaintiff class." Order of October 6, 2000. The court stated that "[d]efendant has sent out a notice describing the dispute to all of its current employees who might be part of the potential class," and that because the court has the authority to intervene in the notice process in FLSA cases, the court would do so and prohibit defendant "from seeking or accepting further releases until the court has had an opportunity to assess the fairness of notice accompanying the releases." (Id.)

Plaintiffs seek to void the releases in their entirety. They argue that because defendants sent the releases without court approval, the releases are per se void. Furthermore, plaintiffs argue that the releases are void as a matter of law under the FLSA, the IMWL, and the IWPCA, and that the releases are void because they were obtained through "misrepresentation or coercive threat of economic sanctions." (Pl. Mot. to Void Releases at 5.) Defendants argue that the court should not void the releases because plaintiffs do not have standing to challenge the releases; the issue is not ripe for decision because defendants have yet to assert the releases as defenses to liability; and the releases are not void as a matter of law.

■ Plaintiffs assert that two named plaintiffs, Mark Crews and Richard Giertz, have signed releases, and both wish to be part of the current class action. Therefore, standing and ripeness are not impediments to the filing of a motion to declare their releases void. The two plaintiffs face the

"threatened injury" of not being able to pursue their claims if the releases are valid. *Valley Forge Christian College v. Americans United*, 454 U.S. 464, 475–76, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (internal quotations and citations omitted). Not being able to sue would also constitute a "hardship" to Crews and Giertz making their motion ripe for decision. *Commonwealth Edison v. Train*, 649 F.2d 481, 484 (7th Cir.1980).

 Plaintiffs are also correct that a portion of the releases must be invalidated. Defendants rightly concede that the portion of the releases prohibiting suit under the FLSA is invalid. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir.1986) ("Courts ...have refused to enforce wholly private settlements" in FLSA cases). The question is what should be done with the remaining part of the releases related to state law claims. It is true that the releases were obtained in a manner that disturbs the court, and it is true that defendants were prohibited from further soliciting releases in this manner. However, a defendant is allowed to settle with individual plaintiffs before a federal class action is certified. *In re Painewebber Ltd. Partnerships Litig.*, 147 F.3d 132, 137 (2d Cir.1998). Furthermore, the remainder of the releases, which are indisputably governed by Illinois law, are presumed valid because public policy " 'favors the peaceful and voluntary resolution of claims.' " *Gavery v. Altheimer & Gray*, 1996 WL 521400, at *2 (N.D.Ill. Sept.11, 1996) (citations omitted). That said, the releases could be proved invalid through "clear and convincing evidence" that the agreements were products of "fraud, duress, mutual mistake or unconscionability." *Id.*, at *3. Such evidence, however, does not exist in the record before the court at this time.

 Plaintiffs argue that the remaining part of the releases are invalid as a matter of law because of the legislative history and language of the Illinois Minimum Wage Law and the Illinois Wage Protection and Collection Act. Plaintiffs cite language from IMWL that states that "[a]ny contract, agreement, or understanding for or in relation to [an] unreasonable and oppressive wage for any employment covered by this Act is void." 820 ILCS 105/2. Plaintiffs suggest that the releases are contracts, agreements, or understandings in violation of this language. Furthermore, plaintiffs cite language within the IWPCA restricting certain practices regarding the disbursement of wages and argue that what defendants have done by issuing releases violates the IWPCA and fails to fall within any exceptions under the Act for the withholding of wages. These arguments, however, go to the merits of the case. It is an open question whether, in the context of the IMWL, plaintiffs' wages were unreasonable or oppressive within the meaning of the law or whether, in the context of the IWPCA, defendants' practices violated the IWPCA or failed to fall within an exception created by the Act. Moreover, plaintiffs have failed to cite any judicial or statutory language prohibiting private settlements of disputes regarding the state law claims in contrast to the law relating to the FLSA. *See Walton*, 786 F.2d at 306 (7th Cir.1986) ("Courts ...have refused to enforce wholly private settlements" in FLSA cases). Unlike the FLSA releases, therefore, the IMWL and IWPCA releases cannot be deemed invalid as a matter of law.

 A trial court under Illinois law has the power to "modify a contract so that it comports with the law or sever unenforceable provisions from a contract." *Abbott–Interfast Corp. v. Harkabus*, 250 Ill.App.3d 13, 189 Ill.Dec. 288, 619 N.E.2d 1337, 1343 (1993); *see also* E. Allan Farnsworth, *Contracts* § 5.8 at p. 356 (3d. ed. 1999) ("Though a court will refuse to enforce [an unenforceable] term, it will generally enforce the rest of the agreement, even though the result is to make the contract more favorable to the party who was to be bound by the clause.") Only the FLSA portion of the release is invalid. The court cannot declare the rest of the releases invalid without proof of fraud, duress, or misrepresentation. The court sees no reason why it cannot practicably sever the invalid portions of the releases. Therefore, plaintiffs' motion to void the releases is granted to the extent of the FLSA releases but denied with respect to the releases of state claims.

## II. Motion to Send Corrective Notice

Because the court grants plaintiffs' motion to void the releases in part; that is, the portion of the releases related to FLSA claims, corrective notice must be sent to apprise employees that they retain their rights to sue under the FLSA. Defendants have said, and plaintiffs do not dispute, that they and plaintiffs are currently discussing ways to give notice to all employees that language in the releases prohibiting claims under the FLSA is invalid. Provided that upon review, the court determines that the language in such notice is appropriate, this manner of notice should be sufficient to apprise class members that they retain their rights to sue under the FLSA. Plaintiffs' motion to send corrective notice is denied to the extent that plaintiffs wish to send corrective notice regarding releases of state claims and denied as moot to the extent that plaintiffs with to send corrective notice regarding the FLSA release.

## III. Motion for Class Certification

Plaintiffs move to certify a class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) for their IMWL and IWPCA claims in counts 1 and 2. Plaintiffs' proposed class would include

> All hourly paid persons who received a check from Encotech Construction Services, Inc. for hours worked in any work week during the time period February 1, 1997 through the present.

(Pl. Am. Mot. for Class Cert. at 2.) Defendants raise a number of objections to class certification. First, they argue that certification should be denied because plaintiffs cannot satisfy the numerosity requirement of Rule 23(a). Defendants do not dispute that plaintiffs have met the other requirements of Rule 23(a), namely typicality, commonality, and adequacy of representation. Further, defendants argue that certification should be denied because plaintiffs have failed to meet the requirements of Rule 23(b)(2) and 23(b)(3). Defendants maintain that an action cannot be pursued under Rule 23(b)(2) because plaintiffs seek primarily monetary, not injunctive relief. Defendants argue that a Rule 23(b)(3) action cannot be maintained because plaintiffs have failed to show that a class action is superior to other methods for adjudicating the state law claims. Finally, even if a class is certified, defendants contend that plaintiffs' class definition should not be used, arguing that it is over-broad.

### Numerosity

The size of the proposed class is relatively small. Excluding the fifteen employees who signed releases of liability regarding their state law claims, the number of potential class members is approximately thirty people. Defendants assert that the class is not so numerous that the joinder of all members is impracticable. Plaintiffs disagree.

Where the class size is relatively small, as it is in this case, courts consider a number of factors in addition to class size in order to determine whether the numerosity requirement is met. As cited by both parties, these factors include judicial economy, the size of individual claims, the financial resources of class members, the ability of claimants to bring individual lawsuits, and the geographic disbursement of the putative plaintiffs. *See* 1 NEWBERG ON CLASS ACTIONS § 3.06 (3d ed.1992) at pp. 3–27, 3–28; *see also Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2000 WL 1774091, *4 (N.D.Ill.Dec.1, 2000)

Considering the above factors, the court finds that the numerosity requirement is met. Defendants are correct that plaintiffs are geographically concentrated, and that this fact argues against class certification. Problematic for defendants, however, is that the other factors run in favor of plaintiffs. Plaintiffs rightly point out that if a class action is not permitted for their state law claims in counts 1 and 2, plaintiffs can refile those claims either as a class action or as individual lawsuits in state court. Were plaintiffs to file multiple claims under multiple laws in multiple fora, precious judicial resources would be wasted on duplicative lawsuits. This result would be inefficient. Furthermore, plaintiffs, who are all hourly workers, are filing relatively small claims (estimated at between $3,000—$8,000). Defendants contend that plaintiffs, some of whom earn upwards of $50,000, are able to

finance lawsuits on their own. While it is debatable whether plaintiffs who earn this much money could afford to finance individual lawsuits under counts 1 and 2, it is clear, as plaintiffs argue, that attorney's fees and costs could easily exceed any individual recovery. Therefore, plaintiffs would be deterred from filing separate claims. Finally, a very important concern is the fear of retaliation for individual employees required to file individual claims, either on their own or as part of the FLSA collective action which is currently underway in this suit. The court in *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2000 WL 1774091 (N.D.Ill.Dec.1, 2000) is handling a very similar case and addressed this factor in its determination of whether the numerosity requirement was met for the purposes of certifying a class. There, a class of sixty employees is filing suit against a company for the same violations alleged in this case. *See id.* at *4. Addressing the fear of retaliation, Judge Lefkow stated:

> Plaintiff has asserted that current employees may feel inhibited to sue making joinder unlikely. Although there is only plaintiff's suggestion of intimidation in this instance, the nature of the economic dependency involved in the employment relationship is inherently inhibiting. Further, the court does not agree with defendants' assertion that the availability of the FLSA action cures these problems.

*Id.* The court finds Judge Lefkow's reasoning persuasive. The numerosity requirement is met.

### Maintenance of a Class Action Under Rule 23(b)

Defendants assert that plaintiffs cannot maintain a Rule 23(b)(2) class action because plaintiffs seek primarily monetary rather than injunctive relief. Furthermore, defendants contend that a Rule 23(b)(3) action cannot be maintained because plaintiffs have failed to show that a class action is superior to other methods for adjudicating the claims at issue.

■ Defendants are correct that a Rule 23(b)(2) action is inappropriate here. "Class certification under [Rule 23(b)(2) ] generally is not appropriate when a party primarily seeks monetary relief." *Liberty Mut. Ins. Co. v. Tribco Const. Co.,* 185 F.R.D. 533, 542 (Mar. 22, 1999); *see also* Moore's Federal Practice, Vol. 5, § 23.43[3][a] (1998) ("As a general rule, class certification under Rule 23(b)(2) is improper if the primary relief sought by the action is monetary.") Plaintiffs' prayers for relief under counts 1 and 2 seek back wages, prejudgment interest on back wages, attorneys' fees and costs, and an accounting for all hours worked and wages paid to class members. It appears that plaintiffs primarily seek monetary, not injunctive relief. Therefore, a class action should not be certified under Rule 23(b)(2).

■ The next question is whether such a class could be certified under Rule 23(b)(3). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.Pro. 23(b)(3). Defendants do not dispute that plaintiffs satisfy the predominance element of the above test. Rather, defendants contest the superiority element, arguing that a class action would not be superior to maintaining a FLSA collective action. Furthermore, defendants argue that it would be confusing for class members to receive notice telling them that in order to join the FLSA collective action, they need to opt-in, while for the class action, they are considered members unless they opt out.

In order to determine whether plaintiffs have satisfied the superiority test, the court must consider

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.Pro. 23(b)(3)(A)-(D).

A class action is superior to other methods for adjudicating plaintiffs' state claims in

counts 1 and 2. As in the case of *Ladegaard*, the court in this case "has not been informed by either party of any pending suits brought by individual class members, other than the [named] plaintiff[s]'," and thus as in *Ladegaard*, "there does not appear to be an interest of individual members in controlling the prosecution of the state claims." *Ladegaard*, 2000 WL 1774091, at *7. Furthermore, plaintiffs' FLSA collective action does not change this conclusion. Though the two actions stem from the same facts, a FLSA action seeks to address violations of federally-conferred rights, while the putative class action under counts 1 and 2 seeks to address violations of state-conferred rights. Defendants repeatedly suggest that if class certification were denied, plaintiffs would be given the easy-to-exercise choice of filing a claim with the FLSA collective action. This argument does not address the central question of where plaintiffs would be able to file their state claims. If they are denied the opportunity of filing a class suit for their state claims in this court, they could file a suit for these claims in state court. That result, however, would be inefficient. It would be desirable to concentrate all litigation related to plaintiffs' common set of facts in this forum. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. May 24, 2001) (stating, in certifying class action on state claims together with FLSA collective action, that "[t]hese common questions [in the state law class action] are best litigated in a single forum, and the proceedings already undertaken cause any separate actions in this and other forums [sic] to be wasteful and inefficient"); *Ladegaard*, 2000 WL 1774091, at *6 ("In evaluating [factors under Rule 23(b)(3) ], the court finds that a class action is a superior method of adjudicating the state claims"); *Brzychnalski v. Unesco, Inc.*, 35 F.Supp.2d 351, 354 (S.D.N.Y.1999) (granting authorization to pursue collective action for FLSA claims and class certification under Rule 23(b)(3) for New York Minimum Wage Act claims finding that under 23(b)(3) "a class action is superior to other methods for the fair and efficient adjudication of the claims in question"); *Leyva v. Buley*, 125 F.R.D. 512, 514 (E.D.Wash.1989) (granting class certification to agricultural workers on state wage and contract law claims where plaintiffs had also sued for wage violations under the FLSA); *but see Jose Rodriguez v. The Texan, Inc.*, No. 01 C 1478 (N.D.Ill. Mar. 7, 2001) (expressing reservations about whether a certifying a class action on state law claims would undermine policy considerations behind Congress' desire to make FLSA class actions opt-in class actions).

Finally, the management of this class action should not be difficult. It is true that notice regarding the class action will indicate that members are, by default, opted in unless they affirmatively opt-out, while notice regarding the FLSA collective action will indicate that members are, by default, opted out unless they affirmatively opt-in to the action. Defendants suggest that the "two notices threaten to be as confusing to potential class members as a Palm Beach presidential ballot." (Def. Resp. to Mot. for Class Cert. at 11.) As in *Ladegaard*, however, plaintiffs' attorneys have indicated that they have successfully drafted such joint notices in other courts in this district, and that drafting a joint notice in this case should, therefore, not be difficult. *See Ladegaard*, 2000 WL 1774091, at *7. If that is the case, the court sees no reason for the drafting of such notice to be a barrier to class certification.

### Class Definition

Plaintiff's proposed definition of the class includes

> All hourly paid persons who received a check from Encotech Construction Services, Inc. for hours worked in any work week during the time period February 1, 1997 through the present.

(Pl. Am. Mot. for Class Cert. at 2.) Defendants argue that this definition is over-broad because it includes all classes of hourly paid persons who worked for Encotech. Defendants contend that plaintiffs initiated this lawsuit in order to address defendants' alleged failure to properly compensate plaintiffs for the time that they spent loading and unloading trucks at job sites and for the time that they spent driving between the company yard and the first and last job sites of the day. Defendants argue that the above class definition is over-broad because it would ap-

pear to include mechanics, cleaners, and clerical employees who never performed the above tasks. In support of their argument, defendants cite cases that hold that a plaintiff who has suffered one type of injury cannot represent a class of people who have suffered various other types of injuries. Plaintiffs respond that all of the class members that plaintiffs seek to represent share something in common. They "all are either former or current employees of [Encotech]; all received a check for work performed on behalf of Encotech[;] and all have potential causes of action based upon the Illinois wage and hour laws." (Pl. Reply at 8.)

The court adopts plaintiffs' class definition, subject to the need to exclude from the state law class persons who signed a release.[1] Defendants' citations correctly state the principle that a class plaintiff should not represent people whose injuries stemmed from employment practices different from practices that caused the named plaintiffs' injuries. In this case, however, plaintiffs contend that all those covered in their class definition suffered from the common practice of underpayment for hourly time spent working for defendants. Plaintiffs assert that their class action seeks not only to address under-compensation for time spent driving, loading, and unloading, but also under-compensation for time spent, for example, attending mandatory meetings, something that all hourly workers had to do.

### Conclusion

For the foregoing reasons, plaintiffs' motion to void releases is granted in part and denied in part; their motion to send corrective notice is denied; and their motion for class certification is granted.

---

1. With respect to such persons, individual issues relative to the signing of the release will likely predominate over common issues.