Thomas **MCLAUGHLIN** and George Carver, **Individually and on Behalf of All Other Persons Similarly Situated, Plaintiffs,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**No. CIV.A. 03–10316–REK.**

United States District Court, D. Massachusetts.

Oct. 20, 2004.

Elicia N. Bernstein, Douglas Hart, Frederick Puglisi, Shepard, Mullin, Richter & Hampton LLP, Los Angeles, CA, Andrew C. Pickett, Erik J. Winton, Jackson, Lewis, LLP, Boston, MA, William A. Whelan, Shepard, Mullin, Richter & Hampton LLP, San Diego, CA, for Liberty Mutual Insurance Company, Defendant.

Theodore M. Hess–Mahan, Todd S. Heyman, Thomas V. Urmy, Jr., Shapiro, Haber & Urmy, LLP, Boston, MA, for George Carver, Thomas McLaughlin, Plaintiffs.

## Memorandum and Order

KEETON, Senior District Judge.

### I.

At the hearing on October 7, 2004, the court heard arguments on Plaintiffs' motion to certify a class along with issues discussed in the following related filings:

(1) Plaintiffs' Motion for Class Certification of Claims Alleged in Count II of the Complaint (Docket No. 32, filed May 18, 2004);

(2) Declaration of Todd Heyman in Support of Motion for Class Certification (Docket No. 33, filed May 18, 2004);

(3) Plaintiffs' Memorandum of Law in Support of Motion for Class Certification (Docket No. 34, filed May 18, 2004);

(4) Defendant's Opposition to Plaintiffs' Motion for Class Certification (Docket No. 35, filed June 1, 2004);

(5) Declaration of Brian O'Connor in Support of Liberty Mutual Company's Opposition to Plaintiffs' Motion for Class Certification (Docket No. 36, filed June 1, 2004);

(6) Declaration of Douglas Hart in Support of Liberty Mutual Company's Opposition to Plaintiffs' Motion for Class Certification (Docket No. 37, filed June 1, 2004);

(7) Plaintiffs' Reply Memorandum of Law in Support of Motion for Class Certification (Docket No. 39, filed June 14, 2004);

(8) Second Reply Declaration of Todd Heyman (Docket No. 40, filed June 14, 2004); and

(9) Defendant's Motion for Leave to File a Supplemental Opposition to Plaintiffs' Motion for Class Certification (Docket No. 70, filed September 3, 2004).

### II.

This is a civil action brought by two persons who were employed by the defendant Liberty Mutual Insurance Company as Auto Damage Appraisers. Plaintiffs allege that they are owed overtime pay and seek to recover that pay under the Fair Labor Standards Act, 29 U.S.C. §§ 207 *et seq* ("FLSA"), and under Massachusetts law. The claim under the FLSA has been aggregated with that of other employees of Liberty Mutual using the opt-in provision under federal law. *See* Order of May 16, 2003 (Docket No. 21). Plaintiffs now seek to aggregate their Massachusetts law claim by certifying a class action under Fed.R.Civ.P. 23(b)(3).

Plaintiffs propose a class defined as follows:

All persons who were employed by Defendant as Auto Damage Appraisers in the Commonwealth of Massachusetts between February 19, 2001 and the date of entry of final judgment in this action.

■ The requirements for certifying a class are set forth in Federal Rule of Civil Procedure 23. If the four requirements of Rule 23(a) are met, then the court must decide whether the action fits within one of the three categories in Rule 23(b). The defendant challenges the class certification on two grounds: (1) that numerosity has not been satisfied and (2) that a class action is not superior to other available methods. Even though the defendant does not challenge the other requirements of Rule 23, "[a] district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir.2003) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Accordingly, I turn first to the requirements of Rule 23(a).

## III.

### A. Rule 23(a) Requirements

Section (a) of Rule 23 requires that a class meet the following criteria:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

I address these requirements in turn.

### 1. Numerosity or Impracticability

■ The first requirement of Rule 23(a)(1) is often referred to as "numerosity," but it might more properly be called the "impracticability" requirement, because the inquiry called for by Rule 23(a)(1) often involves more than merely counting noses.

*See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131 (1st Cir.1985); *see generally* 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1762 (2004). Indeed, in this case, both parties urge the court to look beyond the numbers. The first step in the inquiry under Rule 23(a)(1) is, however, assessing the size of the putative class. In this case, plaintiffs have identified 51 likely class members, and defendant does not dispute this tally. Other courts in this district have noted that a 40 person class is "generally found to establish numerosity." *In re Relafen Antitrust Litigation*, 218 F.R.D. 337, 342 (D.Mass.2003) (Young, J.) (citing *McAdams v. Massachusetts Mut. Life Ins. Co.*, 2002 WL 1067449, at *3 (D.Mass.2002) (Freedman, J.)). Finding that the class size here is slightly above the critical mass of 40, I will consider whether there are any contravening factors militating against class certification, noting that, in some cases, courts have decided to certify a class with fewer than 51 members. *See* 7A Wright, Miller & Kane § 1762 nn. 38–40 (collecting cases). In other cases, courts have decided not to certify a class with more than 51 members. *See id.* § 1762 nn. 35–36 (collecting cases).

Defendant argues first that a class action should not be certified because the 51 putative class members could have opted in to the FLSA action, but only 13 affirmatively did so. Hence, according to the defendant, the adjusters have already voted with their feet against a class action, and those who want to take part can do so through joinder. Plaintiffs have cited several cases in which an opt-out state claim has been permitted to proceed in parallel to an opt-in FLSA action. *See, e.g., Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091 (N.D.Ill. Dec.1, 2000); *Beltran–Benitez v. Sea Safari, Ltd.*, 180 F.Supp.2d 772 (E.D.N.C.2001). These cases were primarily concerned with whether the opt-out provision of Rule 23(b)(3) and opt-in provision of the FLSA are incompatible, and both cases concluded that they are not. *See Ladegaard*, 2000 WL 1774091, at *7; *Beltran–Benitez*, 180 F.Supp.2d at 774. Most of the cases cited by the plaintiffs were at a stage in the proceedings before it could have been known wheth-

er the class members would opt in or not. The question before this court, however, is whether the court should decline to certify the class given that few class members have opted in to a factually similar claim under the FLSA. The only case cited by plaintiffs that addresses this question concludes that such a class should be certified. *See Scott v. Aetna Services, Inc.,* 210 F.R.D. 261, 267 (D.Conn. 2002) (certifying a class where only 22 employees had opted in out of 281 potential class members).

This question must be answered within the analytical framework provided by Fed. R.Civ.P. 23. At this point, I will consider whether this fact implies that the class is not "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). At the outset, it should be noted that membership in the proposed class is independent of whether the FLSA action is joined. As other courts have noted, the FLSA action and state law remedies are entirely separate rights that may be pursued by the plaintiffs. *See O'Brien v. Encotech Construction Services, Inc.,* 203 F.R.D. 346, 352 (N.D.Ill.2001). Thus, an employee's failure to opt in to the FLSA litigation should not deprive them of their right to pursue a state law remedy through a single class action. By enacting an opt-in regime for the FLSA, Congress sought to limit the scope of collective actions under federal law. *See De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 306 (3d Cir.2003) (describing the concern of Congress over increasing litigation due to an expansive interpretation of liability under FLSA by the Supreme Court). I should not, however, infer from that restriction on *federal* remedies a concomitant restriction on *state* remedies. Nothing in the statute limits available remedies under state law. *See* 29 U.S.C. § 216(b) (creating the opt-in class action mechanism for FLSA). Nor should I infer from an employee's election not to pursue a federal remedy a forfeiture of that employee's right to pursue a state remedy. Requiring the employees who have not opted in to the FLSA claim to pursue duplicative litigation in state court would be a waste of judicial resources and would increase litigation costs for the parties, perhaps prohibitively so for the remaining putative class members.

Thus, the class should be considered to include all 51 employees, and not just the 13 that have joined the FLSA action.

Defendant also argues that the geographic proximity and identifiability of the class members make joinder practicable. In *Andrews,* 780 F.2d at 132, the Court of Appeals for the First Circuit found no abuse of discretion where the district court denied class certification for numerosity reasons; in that case the plaintiffs "came from the same small geographic area—all living in southeastern Massachusetts." The defendant points out that the putative class members are all identified, and all work at one of three offices in Massachusetts: Danvers, Hingham, or Westborough, all of which lie within a 35-mile radius of this court. The plaintiffs argue that their residence is the more relevant point of reference for geographic concentration because many employees work out of their homes; the employees reside in towns spread throughout the state: Windsor, Haverhill, Fall River, and East Harwich, for example. The plaintiffs are correct to focus on the residence of the putative class members, or where they are "living," as the First Circuit did in *Andrews. Id.* The employees' residency is a better determinant of the practicability of joinder than their work address, and here the geographic concentration of *Andrews* is not present.

The cases upon which defendant relies for its geographic proximity and identifiability arguments do not view those factors as dispositive in considering the overall ability of individual plaintiffs to join the action. *See, e.g., Howard's Rexall Stores, Inc. v. Aetna U.S. Healthcare, Inc.,* 2001 WL 501055, at *6 (D.Me.2001) (noting that several of the pharmacies who were putative class members had already agreed to join the litigation and contribute to litigation costs); *Sanft v. Winnebago Industries, Inc.,* 214 F.R.D. 514, 524 (N.D.Iowa 2003) (considering the financial resources of the putative class members, who were upper-level managers); *Andrews,* 780 F.2d at 131 (finding joinder practicable where a subclass had a theoretical maximum of 49 members, but only 11 that were likely to be interested in pursuing the action). A close reading of the cases reveals that identi-

fiability and geographic proximity are certainly *necessary* for joinder to be practicable, but the presence of those factors alone is not *sufficient* to render joinder practicable. Unlike the businesses in *Howard's Rexall* or the executives in *Sanft*, the employees of the defendant here do not necessarily have the means or the individual incentive to pursue the litigation of their own accord through joinder. Indeed, the fact that most plaintiffs have not taken even the simple step of opting in to the FLSA litigation in the related *Dooley* matter confirms that joinder would not be a practicable means for pursuing their claims.

Defendant also argues that the alleged fear of retaliation of the putative class members does not weigh against using joinder and in favor of a finding of impracticability. The defendant argues that fear of retaliation is not well founded due to the lack of any actual retaliation during the pendency of the related case of *Dooley v. Liberty Mutual Insurance Co.*, 307 F.Supp.2d 234 (D.Mass. 2004), and the availability of legal recourse. The lack of actual retaliation, of course, does not refute the existence of a fear of retaliation. Furthermore, the availability of legal recourse for retaliation for asserting a state law claim is in doubt. *See Valerio v. Putnam Associates, Inc.*, 173 F.3d 35, 45 (1st Cir.1999) (finding no such cause of action under Massachusetts law). Defendant also refers to Magistrate Judge Cohen's findings in relation to an emergency motion made by the plaintiffs that the fear of retaliation in this case was, in his words, "sheer poppycock." *McLaughlin v. Liberty Mutual Insurance Co.*, 224 F.R.D. 295, 298 n. 10, 2004 WL 1803192, at *3 n. 10 (D.Mass.2004). Magistrate Judge Cohen's findings are persuasive, although he may not have had the benefit of the full record before this court, and a different legal standard was at issue in that matter. One fact, apparently not before the Magistrate Judge in his emergency session, is that the named plaintiffs in this case actually waited until after they had left their employer before they brought this action based on state law. Many courts have suggested that the employer-employee relationship is of such a nature that an employee "may feel inhibited to sue making joinder

unlikely." *Ladegaard*, 2000 WL 1774091, at *4; *accord O'Brien*, 203 F.R.D. at 351; *Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 267 (D.Conn.2002). Whether a fear of retaliation makes joinder impracticable in this case, however, need not be decided. Analytically, a fear of retaliation may be established by the plaintiffs in making their affirmative case for meeting the standard of Rule 23(a)(1). Here, however, the plaintiffs have made their case, as was their burden, by establishing the size of the class and insufficient individual incentive to pursue the case through joinder. The defendant has not defeated the plaintiffs' argument by showing that geographic proximity or identifiability render joinder practicable. Accordingly, I find that the plaintiffs have established that the class is so numerous that joinder is impracticable.

## 2. Commonality

 Rule 23(a)(2) requires that questions of law or fact be shared by the prospective class, but does not require that every question be common. *See Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D.Mass. 1987). Plaintiffs suggest that several common questions of law and fact exist. Defendant does not contend otherwise.

I find that the prospective class shares several common questions of law or fact. The putative class members were all employed by the defendant, so any questions of fact regarding the defendant's actions or practices with regard to its employees will be common questions of fact. Common questions of law include whether the Auto Damage Appraisers were properly classified as exempt and whether the defendant acted in bad faith in so classifying. These questions are "illustrative rather than exhaustive, but establish the existence of the commonality required by Rule 23." *Kirby*, 116 F.R.D. at 306.

I find that plaintiffs have satisfied the second prerequisite of Rule 23(a).

## 3. Typicality

 The third prerequisite under Rule 23(a) addresses the certification of the lead plaintiff or plaintiffs. Under Rule 23(a)(3),

the lead plaintiffs claims must be typical of the claims of the proposed class. "The central inquiry in determining whether a proposed class has 'typicality' is whether" the class representatives' claims "have the same essential characteristics as the claims of the other members of the class." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 491 (S.D.Fla.2003) (quoting *In re Amerifirst Secs. Litig.*, 139 F.R.D. 423, 428 (S.D.Fla. 1991)). The "plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent members." *Priest*, 118 F.R.D. at 555 (internal quotation marks omitted).

Plaintiffs McLaughlin and Carver (the proposed class representatives) contend that "the claims of the Plaintiffs and the Class arise out of the same policies and wrongful conduct of the Defendant, and are based on the same legal theories." Defendant does not contest this assertion.

I am persuaded that the claims of plaintiffs McLaughlin and Carver are typical of the claims of the class. Accordingly, I find that plaintiffs have met the third prerequisite under Rule 23(a).

#### 4. Adequacy of Representation

Rule 23(a)(4) also addresses the certification of the lead plaintiffs. "Inquiries into the adequacy of representation should focus on the named plaintiffs' ability to prosecute the action vigorously through qualified counsel and their lack of conflicting interest with unnamed class members." *Priest*, 118 F.R.D. at 556 (internal quotation marks omitted); *see also Kirby*, 116 F.R.D. at 308–09 ("The two basic guidelines for meeting the adequacy of representation standard of Rule 23(a)(4) are: (1) the absence of potential conflict between the named plaintiffs and the class members and (2) ... assurance of vigorous prosecution." (internal quotation marks omitted)).

Plaintiffs meet the requirement of vigorous prosecution through qualified counsel. Plaintiffs' attorneys have been litigating before this court in the related *Dooley* litigation, and I am satisfied that they will prosecute this action vigorously and will protect the interests of the absent class members. The record demonstrates that plaintiffs are represented by a "law firm which is thoroughly experienced in class action litigation ...." (Plaintiffs' Memorandum, Docket No. 34, at 14.) Defendant does not contend otherwise.

As for whether plaintiffs McLaughlin and Carver have a conflict of interest with the unnamed class members, plaintiffs offer that all class members "have the same interest in being properly compensated for any overtime hours worked during the class period." (Plaintiffs' Memo., Docket No. 34, at 14) Defendant does not contend that plaintiffs have any conflict of interest. In these circumstances, I find that the plaintiffs have no conflict of interest with the unnamed class members.

Accordingly, I find that the plaintiffs satisfy the fourth prerequisite under Rule 23(a).

#### B. Rule 23(b) Requirements

As explained earlier, a proposed class must also fit one of the three subdivisions of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3). I look first, however, to whether the proposed class qualifies under Rule 23(b)(1) or Rule 23(b)(2). I do so because "where the stricter requirements of 23(b)(1) and 23(b)(2) are squarely presented by the plaintiffs' claims Rule 23(b)(3) is not applicable.... To apply 23(b)(3) [in such circumstances] would run the serious risk of negating the very purpose for which [23(b)(1) and 23(b)(2) ] were promulgated." *Van Gemert v. Boeing Co.*, 259 F.Supp. 125, 130–31 (S.D.N.Y.1966); *see also In re New England Mutual Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33, 40 (D.Mass.1998) (Keeton, J.) ("When the specific facts of a case warrant certification under either 23(b)(1) or 23(b)(3), the general practice is to certify the class under 23(b)(1), whether or not the court also certifies under 23(b)(3).").

#### 1. Rule 23(b)(1)

I turn first to 23(b)(1). Subsection (b)(1) authorizes a class action if

the prosecution of separate actions by or against individual members of the class would create a risk of

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests ....

Fed.R.Civ.P. 23(b)(1). The present factual situation does not warrant a finding of either of the risks explained above. These risks are premised on the likelihood of multiple individual suits being brought. As mentioned earlier in Part III.A.1., little interest has been shown by the class members to opt in to the related FLSA litigation, for whatever reason. It is unlikely that individual suits would occur, and even less likely that such suits would result in incompatible standards of conduct for the defendant. Also it does not appear that a substantial risk exists that Liberty Mutual will become "judgment proof" as a result of this litigation. *Cf. In re New England Mutual Sales Practices Litigation,* 183 F.R.D. 33, 42 (D.Mass.1998).

Accordingly, I find 23(b)(1) inapplicable to the case at bar.

### 2. Rule 23(b)(2)

■ Subsection (b)(2) authorizes a class action if

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2). "Subsection (b)(2) was never intended to cover cases like the instant one where the primary claim is for damages[. It] is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir.1968)

(citing Advisory Committee's Note, Proposed Rules of Civil Procedure, 39 F.R.D. 98, 102 (1965)). Accordingly, I find 23(b)(2) inapplicable to the case at bar.

### 3. Rule 23(b)(3): Predominance and Superiority

■ Having found that this case does not meet the requirements of Rule 23(b)(1) or (2), I must consider whether it nonetheless may be certified as a class action under Rule 23(b)(3). In addition to meeting the Rule 23(a) requirements, a case is appropriately certified as a Rule 23(b)(3) class action only if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

These requirements are referred to as "predominance" and "superiority." In making this finding, Rule 23(b)(3) directs the court to consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The requirement that common issues of law or fact predominate over individual ones is not challenged by the defendant. Nonetheless, I note the following questions of law and fact that are common among the class members, as identified by the plaintiffs:

> [W]hether Defendant properly classified Massachusetts [Auto Damage Appraisers] as exempt; if not, whether Defendant acted in bad faith in doing so; and, finally, whether Defendant can satisfy its obligations to them by paying them "half-time" for their overtime hours under the "fluctuating workweek" doctrine.

(Plaintiffs' Memorandum, Docket No. 34, at 15). The amount of damages for each individual class member will ultimately require some individual proof, but administration of these individual claims will be straightforward and these individual questions do not predominate over the common questions identified above. I conclude that common issues of law and fact predominate over individual issues.

Defendant's main contention is that the class action mechanism is not "superior" to other methods. Defendant has noted that the plaintiffs could request the attorney general to bring a claim on their behalf. This argument has been rejected by a Massachusetts Superior Court considering the similar Massachusetts rule on class actions:

> This Court will not deny class certification based on the possibility that the Attorney General will bring an action that he has yet to bring and not represented to this Court that he will bring. Nor can this Court determine whether an action brought by the Attorney General is a more sensible means than this class action to provide a remedy for the fraud alleged here without scrutinizing the Attorney General's complaint or knowing whether it will be filed.

*Olson v. Energy North, Inc.,* 1999 WL 1332362, *6 (Mass.Super.Ct. Jan. 14, 1999). Some federal courts have denied class certification where the state Attorney General had, in fact, brought a claim on behalf of the consumers in the state. *See, e.g., Sage v. Appalachian Oil Co.,* 1994 WL 637443 (E.D.Tenn. Sept.7, 1994); *Commonwealth of Pennsylvania v. Budget Fuel Co.,* 122 F.R.D. 184 (E.D.Pa.1988). These cases, however, do not bear on whether a court should deny certification simply because the plaintiffs *could* petition the Attorney General to bring suit on behalf of all auto damage appraisers in the Commonwealth, but where the Attorney General has not *actually* brought suit. In this situation, no reason exists for us to presume that the Attorney General would take on the plaintiffs' case, nor does any basis exist for us to know that the Attorney General's suit would bring adequate relief to the class. Judicial resources would not be conserved by taking a wait-and-see approach to whether the Attorney General takes up the plaintiffs' case, especially because the defendant has not provided any indication that such a situation is likely to occur.

Also related to the question of superiority is defendant's argument that the plaintiff class has expressed a disfavor with a class action by not taking advantage of the opt-in provision in the FLSA litigation. In Part III.A.1., I noted that defendant's argument does not have a tendency to show that joinder is practicable. In this part of the analysis, I must consider whether the unwillingness of putative class members to join into FLSA litigation suggests a determination that the class action is not a "superior" means of adjudicating this controversy. The alternative would be either individual suits brought as pendent claims in the opt-in FLSA litigation or a class action in state court. The former option would result in no relief in this court for those who have not opted in. As I determined in Part III.A.1., I will not infer a forfeiture of state remedies, including pursuit of a class action, from the failure to join in the pursuit of federal relief. The latter option would not be a superior means of adjudication. Many of the same issues arise here as have arisen in the FLSA litigation. The parties have entered into joint stipulations and the litigation has been proceeding towards settlement of many of the issues. Resolution of the common issues in a single judicial forum will promote judicial economy and uniformity of outcome. Finally, the class members' failure to opt in does not imply that the class members themselves consider individual action to be superior to a class action. Instead, it suggests that many of the class members lack the individual incentive to bring suit, making a class action superior. I conclude that a class action is a superior means of adjudicating this controversy.

Accordingly, I find that the requirements of Rule 23(b)(3) have been satisfied.

## IV.

■ Although it was not raised by the parties, this court must consider an issue of its own jurisdiction over this case. This court has jurisdiction over the FLSA claims

under federal question jurisdiction, and the basis for its jurisdiction over the state law claims is supplemental jurisdiction. 28 U.S.C. § 1367. Under § 1367(c), enumerated situations exist where a district court may decline to exercise supplemental jurisdiction:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The issue presented in this case is whether I should decline to exercise jurisdiction under § 1367(c)(2), where the state law claim "substantially predominates" over the federal claim.

This question is left to the discretion of the trial court. *See Grispino v. New England Mutual Life Ins. Co.,* 358 F.3d 16, 19 (1st Cir.2004). Two principles of supplemental jurisdiction are at work in this case: first, "the rules of pendent jurisdiction have always been more flexible in federal question cases than in diversity cases, no doubt to facilitate a federal forum for claims under federal law" and second, the concern over "a defending party haled into court against his will." *Rosario Ortega v. Star–Kist Foods, Inc.,* 370 F.3d 124, 138 n. 13, 144 n. 20 (1st Cir.2004) (citations and quotation marks omitted), *cert. granted,* —— U.S. ——, 125 S.Ct. 314, 160 L.Ed.2d 221 (2004). Here, retaining jurisdiction would facilitate a federal forum for federal claims because it would allow the federal court to hear both federal and state law claims, rather than only the state court being able to hear both federal and state law claims. The pendent state law claims are being brought by additional plaintiffs, rather than against additional defendants, so no risk exists of haling an additional defendant into court—the defendant is already properly before this court.

I am mindful, however, of a Third Circuit opinion which found an abuse of discretion when a district court exercised supplemental jurisdiction over a class of state law plaintiffs where only a small number of the class members opted in to the FLSA litigation that was the source of original jurisdiction. *See De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301 (3d Cir.2003). In *De Asencio,* the state law class consisted of approximately 4,100 persons, of which 447 were members of the FLSA class. *Id.* at 305. The Third Circuit found an abuse of discretion based on "the inordinate size of the state-law class, the different terms of proof required by the implied contract state-law claim, and the general federal interest in opt-in wage actions ...." *Id.* at 312. It concluded that "the federal action is an appendage to the more comprehensive state action." *Id.* For several reasons, the concerns expressed by the Third Circuit are not present in this case. The state law class in *De Asencio* was orders of magnitude larger than the 51–member class here. Although only 13 of the 51 class members are also bringing FLSA claims, the nationwide class action, also before this court, is larger than the state class. The state law claim in this case, unlike in *De Asencio,* relies on the same set of facts as does the federal claim. The First Circuit has also recently stated that familiarity with a nationwide class action is reason to exercise discretion to retain jurisdiction over a state claim. *See Grispino,* 358 F.3d at 19 ("The Massachusetts federal court had already handled a large class action involving the same sorts of claims as this case and had continuing jurisdiction. Its familiarity provided a sufficient basis for its decision to retain jurisdiction over the action."). I conclude that in these circumstances it is within my discretion to retain jurisdiction over the state law claims of the class, and sound reasons of judicial economy favor doing so. Accordingly, I conclude that I have subject matter jurisdiction over the claims of the state law class members.

## ORDER OF CERTIFICATION

For the foregoing reasons, it is ORDERED:

(1) Plaintiffs' Motion for Class Certification (Docket No. 32) is ALLOWED.

(2) Until further order of this or a higher court, this action may be maintained as a class action under Fed.R.Civ.P. 23(a) and 23(b)(3), subject to the terms and conditions set forth below.

(3) The Class is hereby certified, consisting of:

Persons who were employed by Defendant as Auto Damage Appraisers in the Commonwealth of Massachusetts between February 19, 2001 and the date of entry of final judgment in this action.

(4) Lead plaintiffs Thomas McLaughlin and George Carver are certified as the representatives of the class.

(5) Counsel for plaintiffs are directed to submit to the court a draft of their proposed form of notice within fourteen days of the date of this Memorandum and Order of Certification. Any objections to the proposed notice must be filed fourteen days after receipt of the proposed form of notice.

(6) Counsel will be prepared to discuss the proposed form of notice, in addition to any other pending matters, at the next hearing in this case, which has been scheduled for Tuesday, November 23, 2004, at 9:30 a.m.