Frederick **SCHOLTISEK,**
et al., Plaintiffs,

v.

THE **ELDRE CORPORATION,**
Defendant.

No. 03–CV–6656.

United States District Court,
W.D. New York.

Feb. 4, 2005.

---

Stanley J. Matusz, Rochester, NY, for Plaintiffs.

Robert C. Weissflach, Harter, Secrest and Emery LLP, Buffalo, NY, for Defendant.

### DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Fredrick Scholtisek, commenced this action against his former employer, Eldre Corporation ("Eldre"), alleging that Eldre has violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law by willfully making impermissible deductions in the pay of employees who are paid on a salary basis. Plaintiff seeks declaratory relief and money damages, on behalf of himself and all other similarly situated employees ("class members").

On July 15, 2004, in open court, based on the then-existing record, I denied without prejudice plaintiff's motion for an order directing the issuance of expedited notice to all class members advising them of their rights to "opt in" to this action with respect to plaintiff's FLSA claims. The parties have since engaged in some discovery, and plaintiff has now renewed his motion ("the FLSA motion"). In addition, plaintiff has moved to certify his state law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("the Rule 23 motion").

## STATUTORY FRAMEWORK

### I. Rule 23 Certification

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *General Tel. Co. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). The class-action device is designed for cases in which the "issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class." *Id.* (quoting *Califano*, 442 U.S. at 701, 99 S.Ct. 2545) (internal quotation marks omitted). In those cases, a class action can conserve the resources of both the court and the parties. *See id.*

In order to qualify for class certification, an action must first meet the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

If that showing is made, then the party seeking class certification must show that at least one of the three conditions set forth in Rule 23(b) have been met. The first of those is that the prosecution of separate actions by individual class members would create a risk of either (1) inconsistent adjudications that "would establish incompatible standards of conduct for the party opposing the class," or (2) adjudications with respect to individual class members that would either be dispositive of the interests of other, non-party class members, or substantially impair their ability to protect their interests. Fed.R.Civ.P. 23(b)(1).

The second condition of Rule 23(b) is met when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ." Fed.R.Civ.P. 23(b)(2). Certification under this subsection, then, is only appropriate if at least some of the relief sought is injunctive in nature. *See Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 163–64 (2d Cir.2001) (discussing standards for Rule 23(b)(2) certification).

The third condition is met when the court concludes that (1) questions of law or fact common to the class members predominate over any questions affecting only individual members, and (2) a class action would be superior to other available methods for the fair and efficient adjudication of the controversy. Factors bearing on those findings include: class members' interests in individually controlling the prosecution of separate actions; the extent and nature of any litigation concerning the controversy that has already been commenced by members of the class; whether it would be desirable to concentrate the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3); *Kern v. Siemens Corp.*, 393 F.3d 120, 122 n. 2 (2d Cir. 2004).

In seeking certification of a class, the plaintiff bears the burden of establishing that the action satisfies these requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 58 (2d Cir. 2000). A court may certify a class action only if it is "satisfied, after a rigorous analysis," that the rule's prerequisites have been established. *Falcon*, 457 U.S. at 161, 102

S.Ct. 2364. This analysis will inevitably be "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 160, 102 S.Ct. 2364 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). In some cases, it may be possible to conduct the required inquiry by looking no further than the pleadings, but in others, the court may be required to "probe behind the pleadings before coming to rest on the certification question." *Id.* In that event, it may be necessary to conduct discovery to establish a sufficient evidentiary record from which to make the class determination. *See Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 571 (2d Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982).

■■■ Notwithstanding the district court's ability to look beyond the pleadings, though, its resolution of a class certification motion should not become "a preliminary inquiry into the merits" of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). "In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* at 178, 94 S.Ct. 2140 (quoting *Miller v. Mackey Int'l,* 452 F.2d 424, 427 (5th Cir.1971)); *see also Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 292 (2d Cir.1999) (class plaintiffs need not demonstrate at certification stage that they will prevail on the merits), *cert. denied,* 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000). In addition, in deciding whether to grant class certification, the court must assume the truth of the factual assertions contained in the complaint. *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield,* 938 F.Supp. 1131, 1139 (E.D.N.Y.1996).

In sum, a court considering a class certification motion "must look somewhere between the pleading and the fruit of discovery .... [E]nough must be laid bare to let the judge survey the factual scene on a kind of sketchy relief map, leaving for later view the myriad of details that cover the terrain." *Sirota,* 673 F.2d at 571–72 (quoting *Professional Adjusting Sys. of America, Inc. v. General Adjustment Bureau, Inc.,* 64 F.R.D. 35, 38 (S.D.N.Y.1974)). In undertaking its analysis, the court must also bear in mind that "[t]he Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation." *Jones v. CCH–LIS Legal Information Servs.,* No. 97 CIV. 4372, 1998 WL 671446 at *1 (S.D.N.Y. Sept. 28, 1998) (citing *Korn v. Franchard Corp.,* 456 F.2d 1206, 1208–09 (2d Cir.1972); *Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969)).

## II. FLSA Collective Actions

■■■ Section 216(b) of Title 29 provides in part that

> [a]n action to recover [unpaid wages] may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

This section, which was enacted prior to Rule 23, thus provides something akin to a class action. A so-called "collective action" under the FLSA differs from a Rule 23 action in some respects, however.[1] First, it provides for an "opt in" class, whereas a judgment in a class action binds all class members unless they previously opted out. *See* Fed.R.Civ.P. 23(c)(2), 23(d). Second, the FLSA simply requires that the employees be "similarly situated." The other factors required in class actions—numerosity, typicality, etc.—do not apply to collective actions. *Levinson v. Primedia Inc.,* No. 02 Civ. 2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003).

---

1. For the sake of convenience, all references to "collective actions" or to "class actions" will be understood to refer to such actions under the FLSA or Rule 23, respectively.

■ The Second Circuit has held that a district court has the power to order that notice be given to other potential members of a plaintiff class under the opt-in provisions of the FLSA. *See Braunstein v. Eastern Photographic Labs., Inc.,* 600 F.2d 335 (2d Cir. 1978) (per curiam), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979); *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 101, 104 (S.D.N.Y. Sept. 19, 2003). Although the FLSA does not contain a class certification requirement, *see Taillon v. Kohler Rental Power, Inc. ex rel. Kohler Co.,* No. 02 C 8882, 2003 WL 2006593, at *1 (N.D.Ill. Apr. 29, 2003), such orders are often referred to in terms of "certifying a class." *See, e.g., Hunter v. Sprint Corp.,* 346 F.Supp.2d 113, 117 (D.D.C.2004); *De Luna–Guerrero v. North Carolina Grower's Ass'n, Inc.,* 338 F.Supp.2d 649, 654 (E.D.N.C.2004). The analysis is in some respects similar to that used in class actions, however, in that the court has to decide whether there is a sufficient showing of "similarly situated" employees, and to whom the notice should be sent.

■ Courts utilize a two-step approach when certifying collective actions under the FLSA. *See,* e.g., *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1213–14 (5th Cir.1995); *Schwed v. General Electric Co.,* 159 F.R.D. 373, 375 (N.D.N.Y.1995); *Lusardi v. Xerox Corp.,* 122 F.R.D. 463 (D.N.J.1988). In the first step, the court examines the pleadings and affidavits of the proposed collective action and determines whether the proposed class members are "similarly situated." *See Mooney,* 54 F.3d at 1213–14. If the court finds that the proposed class members are similarly situated, the court "conditionally certifies" the class. *Id.* Putative class members are given notice and the opportunity to "opt in" and the action proceeds as a representative action throughout discovery. *Id.*

■ In this early phase, courts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate. "At the notice stage, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Id.* at 1213. To demon-

strate that other potential plaintiffs are similarly situated to him, then, a plaintiff must make only a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y.1997) (citations omitted). "A plaintiff's burden [at this stage] is minimal, especially since the 'determination that potential plaintiffs are similarly situated' is merely a 'preliminary' one." *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d at 104 (quoting *Hoffmann,* 982 F.Supp. at 261).

■ "The second phase of an FLSA collective action inquiry occurs after discovery is largely complete and 'is typically precipitated by a motion for "decertification" by the defendant.'" *Scott v. Aetna Services, Inc.,* 210 F.R.D. 261, 264 (D.Conn.2002) (quoting *Mooney,* 54 F.3d at 1214). At this stage, the court makes a factual finding on the "similarly situated" issue, based on the record produced through discovery. If the court finds that the claimants are similarly situated, the collective action may proceed to trial. If the claimants are not similarly situated, the court decertifies the class, and the claims of the opt-in plaintiffs are dismissed without prejudice. The class representatives then proceed to trial on their individual claims. *Id.; Scott,* 210 F.R.D. at 264.

### III. "Exempt Employees" under the FLSA

In general, the FLSA requires employers to pay their employees overtime, at the rate of one and one-half times their usual hourly wage, for hours worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a). Employees who are "employed in a bona fide executive, administrative, or professional capacity" are exempt from these overtime pay requirements, however. 29 U.S.C. § 213(a) (1994).

In order to qualify for this exemption, an employee must satisfy both a "duties test" and a "salary basis" test. *See* 29 C.F.R. §§ 541.100, 541.200, 541.300. With respect

to the "duties test," federal regulations provide that an "executive" employee is one:

[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

[w]ho customarily and regularly directs the work of two or more other employees; [and]

[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

Similarly, the regulations provide that an "administrative" employee is one:

[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;

and

[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

A "professional" employee is defined as an employee "[w]hose primary duty is the performance of work" that either "[r]equir[es] knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction," or "[r]equir[es] invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. § 541.300.

To fit into one of these three categories, the employee must also meet the salary basis test. The salary basis test covers employees who "regularly receive[ ] each pay period . . . a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. §§ 541.602(a). Subject to certain exceptions, "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days

or hours worked." *Id.* The regulations further provide that "[a]n employee is *not* paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business," and that "[i]f the employee is ready, willing and able to work, deductions may not be made for time when work is not available." *Id.* (emphasis added).

"In *Auer v. Robbins,* the Supreme Court adopted the Secretary of Labor's view that the salary basis test denies 'exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay "as a practical matter." That standard is met . . . if there is either an actual practice of making such deductions or an employment policy that creates a "significant likelihood" of such deductions.'" *Kelly v. City of Mount Vernon,* 162 F.3d 765, 768 (2d Cir.1998) (quoting *Auer,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)). The Court in *Auer* also concluded that a "one-time deduction . . . under unusual circumstances" is not enough to establish a significant likelihood of such deductions. 519 U.S. at 462, 117 S.Ct. 905.

## DISCUSSION

### I. FLSA Claim

#### A. Conditional Certification

Plaintiff, who worked for Eldre from July 1999 until December 2001, alleges that Eldre (a manufacturer of "bus bars," which transmit electrical power in various applications, *see* Affidavit of Debbie Kaufman, Dkt. # 48 at ¶ 3) has a policy and practice of willfully making impermissible deductions from the pay of salaried employees. Specifically, plaintiff alleges that Eldre has a practice of: (1) docking salaried employees in partial-day increments when the employees have not worked a full day; (2) maintaining a policy that creates a significant likelihood of improper deductions from the pay of exempt employees; and (3) instructing exempt employees not to report to work for certain days on account of "plant shutdowns," and then reducing those employees' weekly pay.

Based on those allegations, plaintiff requests the Court to direct that notice be sent to a class consisting of all individuals who are or were employed by Eldre within the last three years at any location and who were classified as "exempt" or paid on a salary basis for purposes of the FLSA's mandatory overtime requirements.

 Defendant contends that there is no basis for a collective action here because plaintiff is not similarly situated to the other members of the proposed class. Eldre bases that argument largely on its assertion that plaintiff's job of assistant sales manager was dissimilar from those held by many of the other potential class members, who include engineers, supervisors, etc. I disagree, however, and find that plaintiff has satisfied his burden, at this preliminary stage at least, of showing that the other members of the proposed class are similarly situated to him, and that this case should proceed as a collective action under the FLSA.

In support of its argument, defendant cites several cases in which courts found a collective action inappropriate because the plaintiffs failed to show that there were similarly situated class members. Those cases are inapposite, however. For one thing, the problem in some of those cases was not that the plaintiffs had identified other class members who were not similarly situated; they failed to identify other class members *at all.* For example, in *Davis v. Charoen Pokphand (USA), Inc.*, 303 F.Supp.2d 1272 (M.D.Ala. 2004), in which the plaintiffs sought unpaid overtime, the court denied certification primarily on the ground that the plaintiffs had failed to demonstrate that there even *were* any other employees who desired to opt in. *Id.* at 1278. Likewise, in *Mackenzie v. Kindred Hosps. East, L.L.C.*, 276 F.Supp.2d 1211 (M.D.Fla.2003), which also involved a claim for unpaid overtime, the court stated that

"the plaintiff has failed to show that any individual has expressed a desire to opt into this lawsuit." *Id.* at 1221. In contrast, in the case at bar fifteen individuals other than plaintiff have filed consents to opt into this action, which further supports plaintiff's assertion that there are similarly situated employees who wish to participate in this action.[2]

It should also be noted that those cases involved claims for unpaid *overtime* by employees who contended that they had been wrongly classified as exempt. In such cases, the purported class members' job duties, and any dissimilarities among them, will often be relevant to whether the employees are similarly situated for purposes of the FLSA, insofar as their job duties relate to whether they were correctly classified as exempt from the FLSA's overtime requirements. *See, e.g., Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1271 (M.D.Ala.2004) ("the 'similarly situated' inquiry in this case must be analyzed in terms of the nature of the job duties performed by each putative plaintiff, because the ultimate issue to be determined is whether each employee was properly classified as exempt"); *Morisky v. Public Service Elec. & Gas Co.*, 111 F.Supp.2d 493, 498 (D.N.J.2000) (same).[3]

Here, however, plaintiff does not allege that he should have been paid overtime, or that he was improperly classified as exempt, but that he and other exempt employees' pay should not have been docked for partial-day absences or plant shutdowns. Plaintiff has also submitted evidence, in the form of his and other employees' affidavits and timecards, indicating that such deductions were widespread at Eldre. *See* Lee A. Begy Aff. (Dkt. # 41 Att. 4); Herve Dauvergne (Dkt. # 41 Att. 5); Martin Melich Aff. (Dkt. # 41 Att. 6); Fredrick Scholtisek Aff. (Dkt. # 41

---

**2.** In a letter to the Court dated February 2, 2005, plaintiff's attorney states that as of that date, 41 Eldre employees have signed consent forms to participate in this action.

**3.** The third case cited by defendant, *Sheffield v. Orius Corp.*, 211 F.R.D. 411 (D.Or.2002), although it does involve denial of a motion for certification of a collective action on the ground that the proposed class members were not simi-

larly situated, is also distinguishable because the proposed class members in that case not only held different job titles, but also enjoyed different payment structures (piece-rate, hourly, and salaried), and were employed by different subsidiaries and affiliates of the defendant corporation, some of which committed the alleged FLSA violations before the defendant acquired them. *Id.* at 413.

Atts. 7, 8); Matusz Aff. (Dkt. # 42) ¶ 4 (representing that as of August 25, 2004, examination of Eldre employees' timecards had identified "at least seventy-seven (77) separate instances when Eldre docked a salaried employee for a partial day's worth of wages").

That these employees may have had different duties and performed different types of work is not particularly relevant to whether they are similarly situated with respect to plaintiff's claims. What *is* important is that these employees were allegedly subject to a common practice or scheme on Eldre's part of docking salaried employees' pay in violation of the FLSA.[4] *See Ayers v. SGS Control Servs., Inc.,* No. 03 Civ. 9078, 2004 WL 2978296, at *4 (S.D.N.Y. Dec. 21, 2004) (plaintiffs must show "that they and potential plaintiffs together were victims of a common policy or plan that violated the law"); *Horne v. United Services Auto. Ass'n,* 279 F.Supp.2d 1231, 1235 (M.D.Ala.2003) (plaintiff must demonstrate that other employees "were similarly affected by alleged work policies"); *Reed v. Mobile County Sch. Sys.,* 246 F.Supp.2d 1227, 1233 (S.D.Ala.2003) (pattern or practice of not paying employees earned overtime compensation would satisfy the similarly-situated requirement).

In that regard, I also note that plaintiff alleges that Eldre maintained an explicit policy directed at all its salaried employees that created a significant likelihood of impermissible pay deductions. Specifically, plaintiff points to a provision in Eldre's employee handbook, under the heading, "Exempt Employees," stating that if an employee who has used up all his sick, personal and vacation time is absent from work for more than three hours on any given day, "the employee cannot and will not be allowed to come to work. The employee will not be paid for the entire day." Scholtisek Aff. (Dkt. # 41) Ex. F.

Plaintiff contends that this policy violates the regulatory provision that salaried employees' pay cannot be docked for absences occasioned by the employer. *See* 29 C.F.R. § 541.602(a); *Baudin v. Courtesy Litho Arts, Inc.,* 24 F.Supp.2d 887, 890 (N.D.Ill.1998) (employer "cannot dock a salaried employee's pay 'for absences occasioned by the employer'"); *Thomas v. County of Fairfax, Va.,* 803 F.Supp. 1142, 1148 (E.D.Va.1992) ("an FLSA-exempt executive's pay may not vary as a function of the number of hours worked"), *aff'd,* 16 F.3d 408 (4th Cir.1994). Again, since this policy applies to salaried employees generally, the class members' individual job duties are not relevant to whether they are similarly situated with respect to the application of this policy.

Also, insofar as the policy is concerned, all employees subject to it would be similarly situated regardless of whether their pay was actually docked during the limitations period. What matters is whether the policy created a significant likelihood of improper deductions. *See Auer,* 519 U.S. at 461, 117 S.Ct. 905; *see also Hoffmann,* 982 F.Supp. at 262 ("plaintiffs need not have each suffered actual deductions to show that they and other managers were 'subject to' improper reductions in compensation by virtue of a common policy").

Defendant also contends that the proposed class is overbroad because it includes Eldre officers who were responsible for developing and implementing the alleged unlawful policies and practices. It does not appear that there are very many such officers relative to the size of the class as a whole, however, and at this preliminary stage, I see no prejudice to defendant if the case proceeds as a collective action.[5] If discovery reveals that some employees are not similarly situated, the class can be redefined or decertified. *See Hoffmann,* 982 F.Supp.

---

4. Eldre does not appear to contend that any of these employees were paid on an hourly basis, and that their pay could therefore be docked for hours not worked. *See* Defendant's Memorandum of Law (Dkt. # 49) at 11 ("each of the putative class members are exempt employees under federal and state law"). Of course, since the proposed class consists solely of exempt employees, by definition the class would not include any hourly employees.

5. According to plaintiff's attorney, the proposed class would number 141 persons, eight of whom are the individuals that Eldre contends had a hand in developing or implementing the challenged policies. *See* Stanley J. Matusz Aff. (Dkt. # 30, Att. 3) ¶ 12.

at 262 ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case") (quoting *Krueger v. New York Tel. Co.*, No. 93 CIV. 0178, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993)).

Defendant also attempts to show that the policy does not violate the FLSA, and that any deductions that have been made from salaried employees' pay were proper. Those matters, however, go to the merits of plaintiff's claims, which are not relevant at this stage. *Ayers*, 2004 WL 2978296, at *6 ("Defendants' focus on the merits is misplaced at this [conditional certification] stage"); *LeGrand v. Education Management Corp.*, No. 03 Civ. 9798, 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) ("Whether the plaintiff and the proposed recipients of the opt-in notice are similarly situated does not implicate the merits of the plaintiff's claim"); *McElmurry v. U.S. Bank Nat'l Ass'n*, No. CV–04–642, 2004 WL 1675925, at *16 (D.Or. July 27, 2004) ("at the initial stage of the conditional collective action certification process under the FLSA ... plaintiffs do not need to make a showing of success on the merits of their claims").

Given the modest burden on plaintiff at this preliminary stage, then, I conclude that he has adequately shown the existence of similarly situated employees, and that notice should be sent to them to afford them the opportunity to join the case. *See Braunstein v. Eastern Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir.1978) (notification of putative plaintiffs "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits").

## II. Class Action Certification

### A. Supplemental Jurisdiction

■ In addition to his federal FLSA claims, plaintiff alleges that defendants' pay deductions also violated New York's Labor Law. Both "[t]he FLSA and New York state labor laws entitle employees to time-and-a-half overtime for hours worked in excess of forty hours per week." *Noble v. 93 University Place Corp.*, 303 F.Supp.2d 365, 376 (S.D.N.Y.2003) (citing 29 U.S.C. § 207(a)(1); N.Y. Lab. L. § 160; 12 N.Y.C.R.R. § 142–2.2). That is so because New York State regulations provide that "[a]n employer shall pay an employee for overtime ... in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of ... the Fair Labor Standards Act of 1938, as amended .... In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended ...."

Plaintiff has moved to certify his state law claims as a class action under Rule 23. In opposition to the motion, defendant contends that the court should decline to exercise supplemental jurisdiction over these claims because they raise novel and complex issues of state law.[6] Defendant also argues that Rule 23's requirements for class certification have not been met.

■ In support of its contention that plaintiff's state law claims present "novel and complex" issues of New York law, defendant states that its "research reveals that there is not a single case, state or federal, addressing whether the salary basis test applies to claims under the New York State Labor Law." Defendant's Memorandum of Law (Dkt. # 36) at 15. Apparently defendant's research did not unearth *Dingwall v. Friedman Fisher Associates, P.C.*, 3 F.Supp.2d 215, 220 (N.D.N.Y.1998), in which the court stated that "New York law differs from federal law ... in that to establish the [overtime] exception, the employer need not satisfy a 'salary' test, only a duties test." *Accord Bongat v. Fairview Nursing Care Center, Inc.*, 341 F.Supp.2d 181 (E.D.N.Y.2004); *Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746,

---

6. Defendants also raise some other arguments why the Court should not exercise its supplemental jurisdiction over plaintiff's state law claims, but they are all premised on the Court denying plaintiff's motion for conditional certification of his FLSA claims. My decision to grant that motion renders those other arguments moot.

2004 WL 1926087, at \*5 (S.D.N.Y. Aug. 31, 2004).

The reason for this difference is that although New York regulations require that any "employee" receive overtime pay as provided in the FLSA, the regulations also exclude from the definition of "employee" anyone who works in an executive, administrative or professional capacity. *See* 12 N.Y.C.R.R. § 142–2.14(c)(4). The definitions of those three categories require that the person perform certain types of job duties, but do not require that the person be paid on a "salary basis," as do the federal regulations.[7]

■ This hardly seems to present a "novel and complex" issue of state law. Rather, this is simply a modest difference between the two statutory schemes, which-as a number of courts have observed-are otherwise quite similar if not identical. *See Galasso v. Eisman, Zucker, Klein & Ruttenberg,* 310 F.Supp.2d 569, 575 (S.D.N.Y.2004); *Debejian v. Atlantic Testing Labs., Ltd.,* 64 F.Supp.2d 85, 87 n. 1 (N.D.N.Y.1999); *Lopez v. Silverman,* 14 F.Supp.2d 405, 411 n. 4 (S.D.N.Y. 1998). Thus, there is no basis to refrain from exercising jurisdiction over plaintiff's state law claims on this ground.

## B. Rule 23 Requirements

■ I also find that class certification is appropriate under Rule 23. First, the numerosity requirement has been met, since the proposed class numbers about 140.[8] *See Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) (numerosity presumed at forty). I also believe that joinder of all class members, while perhaps possible, would be impracticable. *See, e.g., Sebo v. Rubenstein,* 188 F.R.D. 310, 318 (N.D.Ill.1999) ("The contention that joinder is possible here does not necessarily lead to the conclusion that it would be practicable. The court finds that joinder of the 101 class members as defendants is sufficiently impracticable to meet the numerosity requirement").

■ The commonality and typicality requirements have also been met. "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) (per curiam). Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (internal quotation marks omitted).

■ Defendant's arguments concerning these elements mirror the arguments it advanced concerning the "similarly situated" requirement of plaintiff's FLSA claims: primarily that the various proposed class members held many different types of jobs within Eldre. I reject those arguments in the Rule 23 context for essentially the same reasons I rejected them with respect to the FLSA claims. All the proposed class members were allegedly subject to the same types of unlawful deductions, regardless of their job titles or duties, and it appears that plaintiff's claims are typical of the other class members'.

Defendant also correctly observes that any inquiry into an employee's exempt status is necessarily fact-intensive, *see Burke v. County of Monroe,* 225 F.Supp.2d 306, 319 (W.D.N.Y.2002) (citing *Martin v. Malcolm Pirnie,* 949 F.2d 611, 614 (2d Cir.1991), *cert. denied,* 506 U.S. 905, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992)), and argues that a class

---

7. The definitions of "executive" and "administrative" do contain a requirement that the person be "paid for his services a salary" of at least $386.25 per week, but do not use the term "salary basis," nor is that term (or any equivalent of the salary basis test) contained anywhere in the New York regulations. 12 N.Y.C.R.R. §§ 142–2.14(c)(4)(i)(e), 142–2.14(c)(4)(ii)(d). The definition of "professional" contains no minimum salary requirement. 12 N.Y.C.R.R. § 142–2.14(c)(4)(iii).

8. Although defendant argues that far fewer employees have been alleged to have suffered from unlawful deductions, that misses the point that all of Eldre's salaried employees were subject to the policy concerning partial-day absences. That policy could therefore have subjected all the proposed class members to a "significant likelihood" of deductions. *See Auer,* 519 U.S. at 461, 117 S.Ct. 905.

action would require "hundreds of mini-trials to resolve each particular employee's claims ...." Defendant's Memorandum of Law (Dkt. # 36) at 23.[9] As noted earlier, however, the main issue in this case is not whether particular employees were properly classified as exempt, but whether the deductions made from their salaries were permissible. The fact that the various class members may have had different types of job duties has little or no bearing on that issue.

Plaintiff can also fairly and adequately protect the interests of the class. In response to defendant's contention that plaintiff has not demonstrated his financial ability to prosecute this action, plaintiff has adequately done so in an affidavit, see Dkt. # 39, Attachment 1, ¶ 4, and I see no other impediments to plaintiff's ability to protect the class members' interests.

██ In addition, I find that plaintiff has satisfied the requirements of Rule 23(b)(3).[10] Germane to all class members' claims is the factual issue of whether Eldre has a practice of making certain deductions from the pay of salaried employees, and the legal issue of whether that practice is lawful. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2005 WL 106895, at *4 (S.D.N.Y. Jan. 19, 2005) ("whether Majik and the individual de-

fendants breached their legal issues under the FLSA and New York Labor Law are issues that predominate in this case"); *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 310–11 (D.Mass.2004) (although the "amount of damages for each individual class member will ultimately require some individual proof, ... administration of these individual claims will be straightforward and these individual questions do not predominate over the common questions" of whether employer properly classified employees as exempt and whether satisfied its obligations to pay overtime); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091, at *7 (N.D.Ill. Dec. 1, 2000) ("the questions of defendants' liability for back wages and overtime predominates over any individualized questions of defense or damages").

██ I also believe that a class action is superior to other available methods of adjudicating the class members' claims. For one thing, the state law claims clearly arise out of the same nucleus of operative facts as the FLSA claims, which are going to be adjudicated in this Court in any event. Exercising jurisdiction over the state law claims will therefore promote judicial economy and avoid the risk of duplicative litigation here

---

9. Since the class would number around 140, it is not clear how that would result in "hundreds" of mini-trials. I also note that although defendant raises the specter of hundreds of mini-trials in this context, it simultaneously *downplays* the size of the proposed class with respect to the numerosity requirement.

10. There is authority that "[w]hen either subsection (b)(1) or (b)(2) is applicable, ... b(3) should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation." *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1175 (8th Cir.1995), *cert. denied*, 517 U.S. 1156, 116 S.Ct. 1544, 134 L.Ed.2d 648 (1996); *see also In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir.1989) (stating that certification should be made under (b)(1) if action may also qualify under (b)(3)), *overruled on other grounds, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). I am not convinced that subsections (b)(1) or (b)(2) do apply here, however, *see McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 310–11 (D.Mass. 2004) (finding subsections (b)(1) and (b)(2) inapplicable to state law overtime claims, and certifying class under subsection (b)(3)).

Furthermore, the chief difference between subsection (b)(3) and the other two subsections is that the former provides for mandatory notice and opt-out rights, *see* Fed.R.Civ.P. 23(c)(2), whereas the latter do not. *See* 2 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 4.1 at 5 (2002) (describing differences between certification under (b)(3) and under (b)(1) and (b)(2)). A district court has discretion to permit opt-outs in a(b)(1) or (b)(2) action, however, *see In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir.), *cert. denied*, —— U.S. ——, 125 S.Ct. 277, 160 L.Ed.2d 117 (2004); *Eubanks v. Billington*, 110 F.3d 87, 93–94 (D.C.Cir.1997); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304–05 (2d Cir.1990), and I find that permitting opt-outs would be appropriate in this action regardless of which subsection the class is certified under, so that any employee who makes a conscious decision not to opt into the FLSA action will also be free to opt out of the class action. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 88 (S.D.N.Y.2001) (finding Rule 23(b)(3) certification appropriate so that class members would be fully advised of their rights and be given opportunity to opt out).

and in state court. *See McLaughlin,* 224 F.R.D. at 312 ("Resolution of the common issues in a single judicial forum will promote judicial economy and uniformity of outcome"); *O'Brien v. Encotech Constr. Servs., Inc.,* 203 F.R.D. 346, 352 (N.D.Ill.2001) ("It would be desirable to concentrate all litigation related to plaintiffs' common set of facts in this forum"); *see also City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 172–73, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (court's decision as to whether to exercise supplemental jurisdiction should be based on the course that "best serves the principles of economy, convenience, fairness, and comity").

In addition, many of the individual class members' claims are probably relatively small, meaning that those persons could lack sufficient incentive to bring individual suits. That factor also tends to make a class action "superior." *See Velez,* 2005 WL 106895, at *5 (class action superior where class members "possess relatively small claims 'unworthy of individual adjudication due to the amount at issue'") (quoting *Dornberger v. Metropolitan Life Ins. Co.,* 182 F.R.D. 72, 83 (S.D.N.Y.1998)); *McLaughlin,* 224 F.R.D. at 312 ("many of the class members lack the individual incentive to bring suit, making a class action superior").

■ Defendant also argues that it will be confusing if Eldre employees are simultaneously advised about their right to opt into the FLSA action, and their right to opt out of the class action. While I am not unconcerned about that possibility, I believe that the risk of such confusion can be adequately minimized through a carefully crafted notice. "The presence of both FLSA and state claims has not prevented courts from certifying the state claims under Rule 23(b)" in other cases, *Ladegaard,* 2000 WL 1774091, at *7 (citing *Brzychnalski v. Unesco, Inc.,* 35 F.Supp.2d 351, 354 (S.D.N.Y.1999)), and I see no reason not to certify the state law claims here. *See O'Brien,* 203 F.R.D. at 352 ("the court sees no reason for the drafting of such notice [concerning both FLSA collective action and state law class action] to be a barrier to class certification").

■ Finally, I am not persuaded by defendant's suggestion that a state law class action would have to be limited to those employees who filed consents to opt into the FLSA action. The supplemental-jurisdiction statute, 28 U.S.C. § 1367, provides that, with some exceptions not applicable here,

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Plaintiff's state law claims unquestionably form part of the same case or controversy as the FLSA claims; indeed, they are virtually identical, except for the fact that the state law claims have a longer limitations period. *See McLaughlin,* 224 F.R.D. at 313 (certifying state law class action where thirteen of fifty-one class members had also brought FLSA claims, since state and federal claims were based on same set of facts). In addition, it appears that upwards of forty persons-a substantial number relative to the class as a whole-have now indicated their consent to join in the FLSA action, *see* n. 2, *supra,* and consents are continuing to be filed, so this case does not present the risk of "allowing a federal tail to wag what is in substance a state dog." *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 309 (3d Cir.2003) (quoting *Borough of W. Mifflin v. Lancaster,* 45 F.3d 780, 789 (3d Cir.1995)). *See In re Farmers Ins. Exchange Claims Representatives' Overtime Pay Litigation,* No. MDL 1439, 2003 WL 23669376, at *2 (D.Or. May 19, 2003) ("the exercise of supplemental jurisdiction over the state law claims of opt-ins and non-opt-ins is proper under the circumstances of this case") (citing *Mendoza v. Zirkle Fruit Co.,* 301 F.3d 1163, 1173–74 (9th Cir.2002)); *Scott,* 210 F.R.D. at 264 (noting that court had earlier found it appropriate to exercise supplemental jurisdiction over members of Rule 23 class who had not opted into FLSA class, because their claims arose from same employment relationship that gave rise to FLSA claims); *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 88 (S.D.N.Y. 2001) (finding relatedness test of § 1367 satisfied, so that FLSA claim conferred jurisdic-

tion over state law claim, and rejecting argument that each class member would have to have viable federal claim in order for court's supplemental jurisdiction to extend to his state law class action claim, since "[t]he members of a class … are not parties"); *Brzychnalski v. Unesco, Inc.*, 35 F.Supp.2d 351, 353–54 (S.D.N.Y.1999) ("the creation of two classes [for FLSA and state law claims] in this case is not an impediment to the exercise of supplemental jurisdiction over the [state law] claims").

### III. Content of Notice

 Plaintiff has submitted a proposed notice to the class members, *see* Dkt. # 42 Ex. A. Aside from its opposition to the sending of *any* notice, defendant also objects to certain aspects of the form and content of the proposed notice.

I do not believe that it is necessary for the Court to resolve these disputes at this time. For one thing, the proposed notice relates only to plaintiff's FLSA claims, and says nothing about plaintiff's state law claims. My decision to certify a class as to the state law claims means that notice will also have to be sent to the class members pursuant to Rule 23(c)(2). Plaintiff's proposed notice, by itself, is therefore inadequate to notify the class members about the class action. Thus, the notice must be revised, or added to, in any event. Preferably, the parties will be able to agree on an acceptable notice addressing all of plaintiff's claims, and I will give them an opportunity to do so, as set forth in the Conclusion to this Decision and Order.

### CONCLUSION

Plaintiff's motions for class certification (Dkt. # 30) and for the issuance of notice regarding plaintiff's claims under the Fair Labor Standards Act (Dkt. # 41) are granted.

This action is also hereby certified as a class action with respect to plaintiff's claims under New York law, pursuant to Fed. R.Civ.P. 23(b)(3). The class is defined as all individuals who: (1) are or were employed by defendant Eldre Corporation from December 27, 1997 to date at any location in New York State; and (2) who are or were classified as exempt or salaried employees.

Defendant is hereby directed to provide to plaintiffs' counsel a list of all individuals who meet the above class description, including their current or last known address and telephone number within fifteen (15) days of the issuance of this Decision and Order.

The parties are directed to work together to draft a mutually acceptable notice to be sent to class members advising them of this lawsuit and their opt-in/opt-out rights. The parties should work together and submit a proposed order for such purpose. The proposed notice (or, if the parties cannot agree on the form and content of the notice, each side's proposed notice) shall be submitted to the Court for approval within twenty (20) days of the issuance of this Decision and Order. Once the Court has approved a notice, it will issue an order directing issuance of the notice to class members.

IT IS SO ORDERED.